APPLE *v.* STATE

[No. 167, October Term, 1947]

*Decided May 26, 1948.*

The cause was argued before MARBURY, C.J., DELA-PLAINE, COLLINS, and HENDERSON, JJ., and BAILEY, Circuit Judge, specially assigned.

*Samuel K. Dennis* and *Paul Berman,* with whom were *Sigmund Levin* and *Theodore B. Berman* on the brief, for the appellant.

*Richard W. Emory, Deputy Attorney General,* with whom were *Hall Hammond, Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellant was tried before a jury in the Criminal Court of Baltimore City, convicted of assault and battery, and sentenced to 30 days in jail and to pay a fine of $100.00. He has appealed, and in his appeal raises four questions, one involving the ruling of the court on testimony, another relating to alleged misconduct of the prosecuting attorney, the third questioning the punishment as being cruel and unusual and in violation of the provisions of the Federal and State Constitutions, and the fourth, what he terms general prejudicial conduct of the trial court.

The alleged assault occurred on a picket line of the Industrial Union of Marine and Ship Building Workers of America, while picketing the Jackson Street gate of the Key Highway Yards of the Bethlehem Steel Company's Ship Building Division in Baltimore City. The Union had been on strike since June 25, 1947. The alleged assault occurred on September 29, 1947 at about 6:50 o'clock in the morning. Approximately 100 pickets were patrolling the gate, of whom the appellant was one. A man named Kimmel was driving his automobile in the yard and through the picket line. Some of the pickets got on his automobile, and two police officers came over to get the men off. The window of his car was down and, as he testified, "something come through my window" and hit him on the jaw. When he was about to be hit, he ducked and his hat came off, and the man who hit him grabbed it, and it was thrown over the fence. Kimmel stopped his car and got out, but told the officer he did

not want to prosecute. Officer Harris, assigned to duty on the picket line, testified that he saw appellant go up to the driver's side of the car and reach in, and that Kimmel's head went over to the side, and appellant took Kimmel's hat, and threw it into the road bed. Harris grabbed the appellant who pushed him in the chest, and he thereupon arrested him. He subsequently let him leave the scene when Kimmel said he did not want to prosecute him. However, a warrant was later issued, charging appellant with assault upon both Kimmel and Harris. When he was brought before the magistrate, the latter, on behalf of the State, prayed jury trials. Appellant was indicted not only of assault on Kimmel, but also on the officer. He was convicted of assaulting Kimmel, but was acquitted of assaulting the officer.

On the cross-examination of officer Harris, he was asked "Wasn't it true that the Bethlehem Steel Company was feeding the police, giving them sandwiches and coffee down on the picket line?" The court sustained an objection to that question, appellant made a proffer to prove this, and the court ruled out the proffer. These rulings comprise the first question raised by the appellant, who contends that such evidence should have been admitted to show that the officer was biased, and to affect the credibility of his testimony. The question and the proffer were not directed to any food or drink received by the officer who was testifying, but were general in their nature, and could have had no special bearing on the credibility or bias of this particular officer. They were not in any way pertinent to the issue before the jury, and their only purpose could have been to create prejudice against the police force. The range of cross-examination is wide, but it cannot be extended beyond the pertinent issues in the case. It is and must be left largely to the discretion of the trial judge as to the latitude allowed, and unless there is clear error, (which we do not find in this case) the ruling of the lower court will not be disturbed. *Regester v. Regester*, 104 Md. 1, at page 13, 64 A. 286; *Alford v.*

*United States*, 282 U. S. 687, 51 S. Ct. 218, 75 L. Ed. 624, at page 694.

The record shows that in his address to the jury, the Deputy State's Attorney stated to the jury that he would not be there addressing them, and asking for a conviction of the defendant, unless he believed the defendant guilty as charged, that if the defendant were not guilty, he would not ask for a verdict of guilty, that when a defendant was not guilty he always told the court so, just as he did during that same morning in another case, even though in that case the defendant had, in fact, plead guilty, and just as an Assistant State's Attorney had informed the court on the same morning, that he did not think the evidence warranted a conviction in the case of another defendant who was being tried on a charge growing out of the same strike in which the defendant here was involved, and the court had found the defendant in that case not guilty because of the Assistant State's Attorney's statement. The appellant claims that this was not legitimate argument, and that the making of such statements deprived the appellant of a fair and impartial trial, and constituted a denial of due process. It is, of course, improper for a prosecuting officer to assert his personal belief or personal conviction as to the guilt of the accused, if that belief or conviction is predicated upon anything other than the evidence in the case. But upon the other hand, a prosecuting officer has the undisputed right to urge that the evidence convinces his mind of the accused's guilt. *Riggins v. State*, 125 Md. 165, at page 174, 93 A. 437, Ann. Cas. 1916E, 1117. The remarks made by the Deputy State's Attorney in this case were part of his closing address, after the jury had heard the evidence, and there is nothing to show that what he said was based upon any personal opinion of his own, derived from circumstances outside of the evidence, and was not his conclusion from the testimony which the jury had heard. He was clearly within his rights in expressing his opinion based upon the evidence, and the fact that he emphasized this by saying in effect that it was the policy of the State's

Attorney's office not to ask for a verdict of guilty if it was not convinced that an accused had committed the crime for which he was charged, added emphasis to the view already expressed that the evidence in the case before the jury was sufficient to convict, and that the prosecuting officers thought so. We can see nothing in these assertions or statements which deprived the appellant of a fair or impartial trial or denied him due process.

The question is not properly before us for review. The appellant made no objection, nor did he ask the court to withdraw a juror or to instruct the jury to disregard the statement. We have, therefore, no ruling of the lower court before us upon which can can base our decision. *Luray v. State,* 157 Md. 635, 147 A. 599; *Niemoth v. State,* 160 Md. 544, 154 A. 66. Rules 9 and 17 of our Rules and Regulations Respecting Appeals. We do not think the necessity of having a ruling by the lower court was disregarded in the case of *Viereck v. United States,* 318 U. S. 236, 63 S. Ct. 561, 87 L. Ed. 734, at page 741, cited by appellant as authority for us to pass upon the question without regard to the mode of its presentation. In that case, which was reversed on other grounds, the court mentioned the conduct of the prosecuting attorney in making what were called "highly prejudicial" remarks to the jury. In that case the accused did not object at the time, but objected later in the course of the court's charge to the jury. The trial court overruled the objection because it was too late, but the Supreme Court said the trial judge should have stopped counsel's discourse without waiting for an objection. The Supreme Court did not have before it the question whether the failure of a court to take action *sua sponte* would be reviewable if no objection was made, and if the question was not brought to the attention of the trial court when he had an opportunity to correct the situation. The trial court had acted on the objection in that case. It is, of course, true that in a criminal case where grave error has been committed, and the accused is thereby denied due process, an appellate court

may and should, on its own motion, reverse the conviction. *Coates v. State*, 180 Md. 502, 25 A. 2d 676. This, however, is not such a case, and we can find no denial of due process in the record before us.

The third point raised by appellant is that the sentence of thirty days in jail and $100 fine constituted cruel and unusual punishment, violative of Articles 16 and 25 of the Declaration of Rights. This contention is attempted to be sustained by offering the record of two other cases of assault, in one of which the court fined the accused $50 and costs, and in the other, where a severe assault was made upon an officer, a $150 fine was imposed. Ordinarily any punishment, authorized by a statute, and imposed by a court within the statutory limits is not cruel and unusual punishment, and is not subject to review by this Court. *Dutton v. State*, 123 Md. 373, 91 A. 417, Ann. Cas. 1916C, 89; *Duker v. State*, 162 Md. 546, 160 A. 279; *Walker v. State*, 186 Md. 440, 47 A. 2d 47. In the case before us the offense is one prescribed by the common law, and there is no limit imposed on the court. In the case of *Mitchell v. State*, 82 Md. 527, 34 A. 246, it was stated that if the sentence is grossly and inordinately disproportionate to the offense, it ought to be reversed and the case remanded for a more just sentence, but that when the discretion is properly exercised, the judge is acting in the legitimate discharge of his duty and his sentence is not subject to reversal. The mere fact that in other cases, dissimilar in their facts, different sentences were imposed, is no ground for the conclusion that in the case before us, the sentence was excessive. Each case must be judged upon its own merits. "Undue leniency in one case does not transform reasonable punishment in another case to a cruel one." *Howard v. Fleming*, 191 U. S. 126, 24 S. Ct. 49, 50, 48 L. Ed. 121, at page 124. The assault in the case before us occurred at a place and time where and when there were many people present whose emotions were disturbed and upset by a labor difficulty. Some employees wished to work, and other employees were

attempting to prevent them. It was such a situation that the constant presence of officers of the law was thought necessary. On spark might have kindled a conflagration, and resulted in a riot or disturbance which might have caused injury or worse to many people. An assault by one who was in charge of a picket line, upon a man who was bringing employees to work, was under such circumstances, much more serious than an ordinary assault occurring where there was no danger of further trouble resulting from it. The trial judge probably took this into account in making his sentence more severe than usual, if it was more severe, upon which, we express no opinion. We cannot find that the court imposed any cruel or unusual punishment upon the appellant in this case.

The appellant also contended in the oral argument, although it was not made a part of his brief, that the actions of the judge throughout the trial were such as to indicate that he had a prejudice against the appellant, and that this must have necessarily affected the jury adversely. In support of this contention he points to a number of instances which indicate somewhat abrupt action by the court. At the time of the occurrence of these instances, counsel for appellant made no objection to the court. He attempts to excuse his failure, by his belief that he would have only made matters worse for his client, if he had done so. That, however, is no justification for not giving the judge an opportunity to correct his mistakes, if he made any.

One of the instances, pointed out by the appellant, is where the court asked the appellant what was the name of one of the witnesses about whom some testimony had been given. Appellant answered, giving the name, and counsel also said what the name was. The court said "Now you keep quiet. I don't want any help from you. I asked the man's name and you told the witness his name. I.have my own way of conducting trials. Now witness, you tell me the man's name." Subsequently, the court asked the appellant, while he was on the wit-

ness stand "Are you a negotiating officer?" The witness said "Yes, I help to negotiate the various—

"(The Court) Tell us whether you are a duly appointed negotiating officer. You can answer that yes or no.

(The Witness) As an alternate, yes, sir.

(The Court) What is the truth of it, let's have it.

(The Witness) The Chairman has the right in our Local to appoint an alternate at all times, sir, and that is what I acted as, in that capacity.

(The Court) Are you an alternate?

(The Witness) Yes, sir.

(The Court) Did you have to negotiate in Washington?

(The Witness) Yes, sir, all of us go there.

(The Court) All right, that is all I want to know."

Another instance is where, after the sentence had been imposed and the judge was asked to set the bail, he said "One Thousand Dollars. Keep the pot boiling as far as you want, Mr. Berman. That is all I have to say." These instances may indicate that the court was somewhat irritated or annoyed by the appellant's counsel, but they do not, in our opinion, show any prejudice against the appellant, nor can we say that they tended to prejudice the jury against him. Bad court room manners on the part of a judge do not necessarily prejudice a man who is being tried before him. Sometimes they create sympathy for him in the minds of the jury. A judge should at all times be impartial and courteous and should not permit his personal feelings, if he has any, to be exhibited before a jury, but unless there is some clear showing, which does not exist in this case, that his words or his actions influenced the jury adversely to the appellant, the mere fact that the trial was conducted in an impatient and somewhat peremptory way, does not justify a reversal. We are unable to find upon the whole record that the appellant was prejudiced by any conduct of the judge trying the case.

As we find no reversible error, the judgment will be affirmed.

*Judgment affirmed, with costs.*