# THOMAS JOHN RALEY *v.* STATE OF MARYLAND

[No. 800, September Term, 1975.]

*Decided September 10, 1976.*

The cause was argued before MOYLAN, DAVIDSON and MELVIN, JJ.

*Michael S. Libowitz* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Edward Seibert, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

On March 24, 1975, the appellant, Thomas John Raley, was indicted by the Grand Jury of Baltimore County. The four-count indictment charged that on February 17, 1975, the appellant 1) murdered one Joseph Stephen LeFevre; 2) assaulted his wife, Linda Agnes Raley, with intent to murder her; 3) assaulted Linda Agnes Raley; and 4) unlawfully "used a handgun in the commission of a felony or

a crime of violence as defined in Section 441, of Article 27, of the Annotated Code of Maryland, to wit: murder; . . . ."

The events leading to the indictment can be briefly stated: At about 4:15 A. M. on February 17, 1975, appellant telephoned the Baltimore County Police Department to say that two people had been shot at his home in Baltimore County. After the telephone call was received, Officer Fisher called back to the Raley residence and was told by Raley that he had shot his wife in the chest and a man in the chest. Officer Beatty was dispatched to the address given by Raley, arriving there at 4:27 A. M. Upon arrival, he saw Raley standing in the doorway with a gun in his hand. Raley told Officer Beatty, "I am the one that called you, I shot them both". Upon entering the house, the officer found the victims, LeFevre and Mrs. Raley, lying on the floor, both fully clothed. LeFevre was dead with a bullet hole in his chest. Mrs. Raley had a bullet wound in her throat but was alive and eventually recovered. Officer Glos arrived at the scene shortly after Officer Beatty arrived. Raley gave to Officer Glos two spent revolver casings and three unspent bullets. Officer Glos heard Raley say, "They both came out of the kitchen" and that he "shot them both", and, "They didn't belong there like that". These statements were not elicited from Raley by any questions put to him by anyone and were made in the kitchen of the home shortly after Officer Glos' arrival. A baby-sitter whom Mrs. Raley had engaged for the evening testified that Raley and his wife had been separated for about four weeks prior to February 17, 1975, but that Raley had been out with his wife and spent the night with her February 14, 1975.

Mrs. Raley was called as a witness for the state but refused to testify against her husband; Raley elected not to testify in his own defense.

On July 9, 1975, after three days of trial before a jury in the Circuit Court for Baltimore County (Judge John N. Maguire presiding), appellant was found guilty on Count III (assaulting his wife) and Count IV (using a handgun in the commission of a crime of violence), but was acquitted of Count I (murder of LeFevre) and Count II (assault with

intent to murder his wife). On July 31, 1975, Judge Maguire sentenced appellant to the custody of the Division of Correction for twenty years as to Count III and for fifteen consecutive years as to Count IV.

In this appeal, appellant seeks reversal of both convictions on several grounds. We conclude there is merit in none and shall affirm both convictions.

I

The first five grounds alleged are related to the propriety of the handgun conviction under Count IV of the indictment.

(a)

In his advisory instructions to the jury concerning Count IV of the indictment, the trial judge said:

"The fourth count of the indictment charges the Defendant with the Use of a Handgun. Under our law, Article 27, section 36B, subsection d, any person who uses a handgun in the commission of any felony or crime of violence, shall be guilty of a separate misdemeanor. That is a separate crime. A handgun shall include any pistol or revolver, or any firearm capable of being concealed on the person, and a crime of violence, of course, would include Murder, Robbery, Rape, or an attempt to commit any of these offenses. *The felony alleged in this Count is Murder.*"(Emphasis Added)

No exceptions were taken to this instruction. After deliberating for nearly three hours, the jury sent out a question to the court concerning a "description of charges to be considered". After conferring with counsel, the jury was brought back to the courtroom and the judge "re-read" to the jury "all the charges with respect to this case of Thomas Raley", including a word-for-word repetition of his advisory instruction concerning Count IV. When the judge completed the re-instruction, appellant's counsel said to the judge:

". . . . They asked for charges, and the Court defined

as the fourth count Use of the Handgun. The law specifically says Involuntary Manslaughter is an exception as well as Common Law Assault. It was covered in argument. I would ask that the Court indicate that Involuntary Manslaughter and Assault are specifically excepted from the crime of Handgun Violation."

The judge declined to supplement the advisory instruction as requested.

Appellant contends the judge's refusal constituted reversible error. We disagree. Section 36B (d) of Article 27 of the Code provides:

"(d) Unlawful use of handgun in commission of crime. — Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article, shall be guilty of a separate misdemeanor and on conviction thereof shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years."

Section 441 (e) of Article 27 provides:

"The term 'crime of violence' means abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; and sodomy or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

Appellant argues, correctly of course, that "common law assault is a misdemeanor and since it is not listed as a crime

of violence, it cannot serve as the basis for a conviction under the handgun violation charged in the indictment". It does not follow, however, that it was error not to give the requested advisory instruction. Although it is well settled that under Maryland Rule 756 a trial judge, when requested in a criminal case, must give advisory instructions on every point of law essential to the crime charged and supported by the evidence, *Christensen v. State*, 274 Md. 133 (1975); *Mumford v. State*, 19 Md. App. 640 (1974); *Byrd v. State*, 16 Md. App. 391 (1972); *Peterson v. State*, 15 Md. App. 478 (1972); *Hardison v. State*, 226 Md. 53 (1961), it is equally settled that a trial judge is not obliged to give a requested instruction that is fairly covered in the instructions actually given, and the jury was not misled upon the subject. *Bartholomey v. State*, 260 Md. 504 (1971); *Brown v. State*, 222 Md. 290 (1960); *England v. State*. 21 Md. App. 412 (1974).

In the present case, under Count IV of the indictment the appellant was charged with the "commission of a felony or a crime of violence ... to wit: murder". Thus charged, a prerequisite to conviction thereon was proof beyond a reasonable doubt that the appellant used a handgun during the commission of a murder or the lesser included felony or "crime of violence" of voluntary manslaughter. We think this element of the handgun crime charged was fairly covered by the trial judge's advisory instruction actually given and that the jury was not misled into believing that common law assault could serve as a basis for conviction under that count of the indictment. Having advised the jury of the essential elements of the handgun crime charged, it was not necessary to advise it of elements *not* included in the charge.[1]

---

1. We further observe that the requested instruction, technically, is not a correct statement of the law, for although involuntary manslaughter is not included within the definition of a "crime of violence" under § 441 (e) of Article 27, it is a felony and therefore is not "excepted from the crime of Handgun Violation". See Wilson v. State, 28 Md. App. 168, 179 (1975). And common law assault, although not included within the definition of a crime of violence, is not *"specifically* excepted from the cri ne of Handgun Violation". (Emphasis added). Our decision, however, is not based on this technicality.

(b)

The appellant contends that the jury verdicts of guilty as to Count IV and not guilty as to Count I (murder in the first or second degree, or manslaughter) and Count II (assault with intent to murder) are fraught with such inconsistency as to amount to a denial of due process of law and equal protection of the law. The verdict as to Count IV, he argues, should therefore be stricken. While we recognize the logic of appellant's argument, we think the decision of the Court of Appeals in *Ford v. State*, 274 Md. 546 (1975) is dispositive of the contention. In that case the jury returned not guilty verdicts as to counts in an indictment charging robbery with a dangerous and deadly weapon, robbery, and assault, but guilty of a count charging unlawful use of "a handgun in the commission of a crime of violence". Answering Ford's argument that the conviction was illegal because of the allegedly inconsistent verdicts, the Court said, at pp. 550-551:

"We agree with the petitioner that section 36B (d) requires the trier of fact to determine beyond a reasonable doubt, from the evidence, that the accused used a handgun during the commission of either a felony or a crime of violence as a prerequisite to being convicted of unlawfully using a handgun in the commission of either. Nevertheless, in answering the petitioner's first contention, *we think it to be plain from the language of section 36B (d) that the offense delineated in that statute is separate and distinct from the felony or crime of violence during the commission of which the handgun was used.* Since this is so, an individual on trial for the handgun charge does not necessarily need to have been separately accused of the commission of a felony or crime of violence in an additional count or indictment before he can be charged with or convicted of the crime established in section 36B (d). *And, when the trier of fact considers an*

*indictment containing both a section 36B (d) handgun count and a felony or crime of violence count, a conviction on the former can still be sustained even if the trier of fact returns a finding of not guilty on the latter — in fact, a finding of guilt under both, since they are not inconsistent, can each stand.* A logical corollary then of each of these statements is that when section 36B (d) dictates that any person who is guilty of the handgun offense shall be sentenced 'in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor,' it directs that irrespective of the number of years, if any, the defendant receives for the 'said felony or misdemeanor,' the court must impose a penalty, within the limitations for confinement contained in the statute, for the independent handgun offense." (Emphasis supplied.)

(c)

Appellant argues that the evidence was insufficient to support the handgun violation because the State failed to meet its burden of proving "beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue was properly presented in a homicide case". As we have seen, the fact that the jury found appellant not guilty of murder, manslaughter, or assault with intent to murder, does not affect the validity of its guilty verdict as to the separate crime of unlawful use of "a handgun in the commission of a felony or crime of violence . . . to wit: murder", contained in Count IV of the indictment. There must, nevertheless, be sufficient evidence from which the jury could have found beyond a reasonable doubt that the appellant used the handgun during the commission of a felony or a crime of violence — in this case murder (in the first or second degree) or voluntary manslaughter. Even if it be assumed that an issue of mitigation was generated (and we do not decide that it was), and that the State failed to prove the absence of the mitigating circumstances ("heat of

passion on sudden provocation"), the effect would have been merely to reduce the underlying crime, during the commission of which appellant used a handgun, from murder to the lesser included felony or crime of violence of voluntary manslaughter. In short, our review of the record convinces us that there is ample evidence from which the jury could have found beyond a reasonable doubt that appellant unlawfully used a handgun in the commission of, at the very least, voluntary manslaughter. Such evidence is legally sufficient to support a conviction under Count IV of the indictment.

(d)

Appellant next contends the trial judge erred in "refusing to allow into evidence qualified psychiatric testimony" from Dr. Charles Rafky. After his arrest on February 17, 1975, appellant was ordered by a District Court judge to seek psychiatric treatment as a condition for pre-trial release on bail. He first saw Dr. Rafky on February 20, 1975, "for about one hour". After obtaining his "history" the doctor recommended that he be admitted to a psychiatric hospital for treatment. Approximately a month later he was released from the hospital and Dr. Rafky saw him thereafter "on two occasions".

Appellant did not enter an insanity plea to the charges against him.

Appellant argues that the testimony of Dr. Rafky that was rejected by the court would have shown that at the time appellant shot Le Fevre 1) he did so without the premeditation required for murder in the first degree and 2) he acted in the "heat of passion" so as to reduce the killing to manslaughter. Here again, even if the testimony had been admitted into evidence and even if it had the effect of reducing the underlying felony or crime of violence from murder to voluntary manslaughter, it would not have had the further effect of adversely affecting the legal sufficiency of the evidence for conviction under Count IV of the indictment. Thus, assuming without deciding that the trial judge erred in rejecting the doctor's testimony, the error was

harmless beyond a reasonable doubt. *Dorsey v. State,* 276 Md. 638 (1976).

## (e)

Appellant's contention that the trial judge erred in refusing to instruct the jury that "the burden of proof of the State must be to prove beyond a reasonable doubt that the Defendant did not act in heat of passion" is likewise unavailing to him; for even if error (and we need not so decide), the error was harmless beyond a reasonable doubt so far as conviction under Count IV is concerned. *Dorsey v. State, supra.*

## II

Appellant contends the State failed to establish the *corpus delicti* of the crime of assault, arguing that "no medical records were entered into evidence describing any injuries to Linda Raley". The contention is devoid of merit. In addition to appellant's confession, there is in evidence the uncontradicted testimony of Officer James Beatty describing Mrs. Raley's condition when he arrived on the scene:

> "She was lying on her right side clutching at her throat, had a bullet wound in the throat. Mr. Lefevre, I tried to check him as soon as possible, and I could detect no pulse and no breathing."

## III

After a hearing out of the presence of the jury, the trial judge ruled that appellant's unsolicited oral confession to Officer Joseph Glos was admissible. Appellant contends, for the first time on this appeal, that the judge made his ruling "without affording the Appellant an opportunity to present witnesses on his Motion or to testify himself" and that "The Court's action deprived the appellant of a full and ample opportunity to assert his Constitutional guarantees". The contention is not supported by the record. After Officer Glos had testified on direct examination concerning the events leading up to the confession, and after appellant's counsel

had completed his cross-examination of the officer, the record shows the following:

"MR. LIBOWITZ (Defense Counsel): I have no other questions.

THE COURT: Do you want to be heard? I have to rule on the admissibility of the statement made to the officer by Mr. Raley.

MR. SEIBERT (Assistant State's Attorney): Yes, Sir.

THE COURT: I am ready to rule on it.

MR. SEIBERT: Your Honor, I would use *Richardson vs. State*, where a police officer, 6 Maryland App., 448 —

THE COURT: How about 2 Maryland App., *Carswell vs. State?*

MR. SEIBERT: That is just as good. In this particular case, after the *Miranda* rights were read."

After stating his reasons, the judge overruled appellant's objection to the admissibility of the confession. The court then recessed for ten minutes, after which the following occurred:

"THE COURT: Bring in the Jury. All right Gentlemen.

MR. SEIBERT: I will restate the question. Q. The question is this, Officer —

THE COURT: Mr. Libowitz will object and I will rule again.

Q. Now, what if anything, did the Defendant, Mr. Raley, say to you in the kitchen at the time you were there looking for the chalk?

MR. LIBOWITZ: Objection.

THE COURT: Overruled. The reason is the same I gave before, which is in the record.

A. (by the witness) When Mr. Raley stated to me he just blurted it out. He said 'they both came out

of the kitchen' and that he shot them both, and 'that they didn't belong there like that.' "

At no time did appellant or his counsel indicate in any way that he wished to present any witnesses or testify himself on the issue of the admissibility of the oral statement. Had he intended to do so, he should have made his wishes known to the court. We think he had ample opportunity to make his wishes known to the court. There is, of course, no indication that had he done so he would not have been allowed to testify himself or present witnesses on his behalf on the issue then before the court. We observe that even after the trial resumed in the presence of the jury, appellant offered no evidence bearing on the voluntariness of his confession, an issue ultimately for the jury to resolve after the judge's initial ruling on the matter. We note further that appellant in this appeal gives us no inkling of the nature or content of the testimony he claims he was denied. In sum, we find no irregularity in the proceeding about which the appellant has reason to complain on appeal.

IV

Appellant finally attacks his twenty year sentence for assault and his fifteen year consecutive sentence for the handgun violation as being an abuse of discretion and cruel and unusual punishment and therefore violative of his rights under both the Maryland Declaration of Rights and the United States Constitution.

As we understand the argument it is two-pronged. *First,* he contends the sentences were so disproportionate to the offenses as to evidence an abuse of discretion and to constitute cruel and unusual punishment forbidden by the Maryland Declaration of Rights and the United States Constitution. *Second,* he contends that having been found not guilty of assault with intent to murder his wife, the sentence for the lesser included offense of assault could not legally exceed fifteen years, the maximum then provided by law for the greater offense. We find no merit in either contention.

As to the first, the imposition of sentence in a criminal

case is a matter within the province of the trial judge, *Gleaton, v. State*, 235 Md. 271, 277 (1964); *Reid v. State*, 200 Md. 89, 92 (1952), *cert. denied*, 344 U. S. 848 (1952). And if the sentence is within the limits prescribed by law, it ordinarily may not be reviewed on appeal. *Gleaton v. State, supra; Biles v. State*, 230 Md. 537, 538 (1964). Assault is a common law crime for which no statutory limit governing punishment is prescribed and there was no limitation at common law. *Heath v. State*, 198 Md. 455, 467 (1951). As indicated by the Court in *Heath*, quoting from 2 Bishop, *Criminal Law* (9th ed. p. 32), the determination of the length of sentence for assault is left to the discretion of the trial court and "it has been the judicial habit to look upon assaults as more or less aggravated by such attendant facts as appealed to the discretion for a heavy penalty. * * * An assault is deemed to be more or less enormous according to the facts of the particular case". In the present case, we think the circumstances were such as to bring the assault well within the definition of "enormous" and "aggravated". In passing sentence the trial judge was not required to remain oblivious to evidence of appellant's obvious involvement in the more serious crimes with which he was charged, even though that involvement in the mind of the jury was less than necessary to convict him of those charges. *See Henry v. State*, 273 Md. 131, 149-151 (1974). Nor is there any indication that in determining the sentences the judge was motivated by passion, ill will, prejudice, or any other motive than that of a sense of public duty. Under all the circumstances we cannot say that he abused his discretion or that the sentences were cruel and unusual. *See Smith v. State*, 23 Md. App. 177, 180 (1974), holding that "it is firmly established that punishment is not cruel and unusual because sentences are imposed to run consecutively. *Bieber v. State*, 8 Md. App. 522, 548". *See* also *Wilkins v. State*, 5 Md. App. 8, 22 (1968), and cases there cited, upholding against constitutional attack twenty year sentences for assault and battery.

As to appellant's second contention, concerning the legality of the twenty year sentence for assault, we think *Roberts v. Warden*, 242 Md. 461 (1966) is dispositive. In that

case the Court of Appeals specifically rejected an identical contention as being "without substantive merit". Quoting from *Gleaton v. State, supra,* the Court said, at pp. 460-461:

"There is * * * in this State no statutory limitation on the penalty which may be imposed for simple assault, and there was none at common law. *Heath v. State,* 198 Md. 455, 467, 85 A. 2d 43 (1951); *Apple v. State,* 190 Md. 661, 668, 59 A. 2d 509 (1948). *Nor do we construe the penal limits imposable for the statutory assaults as implying a legislative policy to confine sentences for common law assault to not more than those prescribed for the statutory assaults. Statutes in derogation of the common law are strictly construed, and it is not to be presumed that the legislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced. Dwarris on Statutes,* 695. The matter of imposing sentences is left to the sound discretion of the trial court, and the only restraint on its power to fix a penalty is the constitutional prohibitions against cruel and unusual penalties and punishment found in Articles 16 and 25 of the Maryland Declaration of Rights." (Emphasis added.)

*Judgments affirmed.*[2]

---

2. The record indicates that pursuant to Md. Rule 762 there is still pending before a three-judge Review Panel the matter of appellant's sentences. If this is so, our rejection on this appeal of appellant's contentions concerning his sentences should not be construed as determinative of that panel's decision in the matter, for our scope of review is limited by the general rule "that the imposition of sentence is within the discretion of the trial judge and, if within the statutory limits, will not be disturbed on appeal in the absence of a showing that it was dictated, not by a sense of public duty, but by passion, ill will, prejudice or other unworthy motive". Smith v. State, 23 Md. App. 177, 180 (1974). While such factors are properly to be considered by the review panel, its scope of review is not so limited, the application being addressed to the wide discretion of the panel in determining the appropriateness of the sentences. To modify a sentence, the review panel need not find that the sentencing judge abused his discretion, only that it does not agree that the sentence was appropriate under all the circumstances, including the accused's background and prior criminal record.