CICERO *v.* STATE
CLIFFORD *v.* STATE
(Two Appeals in One Record)

[No. 11, October Term, 1952.]

*Decided November 11, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*William J. O'Donnell* with whom was *George W. Della,* on the brief, for appellants.

*Ambrose T. Hartman,* Special Assistant Attorney General, with whom were *Hall Hammond,* Attorney General,

*Anselm Sodaro,* State's Attorney for Baltimore City and *J. Harold Grady,* Assistant State's Attorney, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

These are appeals from verdicts and judgments rendered by the trial judge, sitting without a jury, in the Criminal Court of Baltimore, finding the appellants guilty of selling and furnishing an alcoholic beverage, beer, to Steve P. Petro, a minor under the age of twenty-one years, contrary to the provisions of Article 2B, Section 103 (a) of Flack's Code (1947 Supplement) as amended by Chapter 102 of the Acts of the General Assembly of 1950. Now Code 1951, Article 2B, Section 114.

Article 2B, Section 103 (a), *supra,* as amended by Chapter 102 of the Acts of 1950, *supra,* makes it a misdemeanor for a licensee or any of his employees to sell or furnish any alcoholic beverage to a minor under twenty-one years of age and contains the following proviso: "provided, however, that any person charged with selling or furnishing any alcoholic beverages to a minor under twenty-one years of age shall not be found guilty of a violation of this subsection, if such person establishes to the satisfaction of the jury or the court sitting as jury, that he used due caution to establish that such minor under twenty-one years of age was not in fact, a minor under twenty-one years of age." Section 103 (d), Section 114(d) of 1951 Code, make it a misdemeanor for a minor to misrepresent his age for the purpose of purchasing, receiving or obtaining any alcoholic beverage. The appellants contend that the trial judge, sitting without a jury, did not have sufficient evidence before him "to find beyond a reasonable doubt that the appellants did sell an alcoholic beverage to one, in fact, a minor" and further that "there was not sufficient evidence to find beyond a reasonable doubt that the appellants did not use 'due caution' to establish the fact that the minor was not, in fact,

under twenty-one years of age." It will therefore be necessary that we recite in some detail the evidence in the case.

Lieutenant Byrne and Officer Erdman of the Baltimore Police Department, on January 12, 1952, shortly after midnight, made an inspection of the Cicero Club at 506 Forrest Street, Baltimore. Officer Erdman testified that they went to a booth where three men were seated and asked Steve Petro, who was drinking from a glass, later found to contain beer, his age. Petro gave his name and said he was twenty years of age, and exhibited his draft card, which showed he was born May 6, 1931. The waitress, Adeline Clifford, one of the appellants here, was questioned by the officers, who testified that she said she had served Petro the beer and had not asked his age. Salvatore Cicero, a son of the appellant, Vincent Cicero, then and there told the officers in the presence of Petro that the draft card was not the card shown to him. Petro then replied to Salvatore: "I didn't show you any card because you didn't ask me for one." Officer Erdman further testified that Petro was not searched at that time. He was searched at the Central Police Station by the turnkey and no other card, indicating his age, was found on his person. Petro, testifying for the State, stated that he was twenty years of age, that he had entered the Cicero night club about 9 P. M. He drank one beer and had started to drink the second one when the police came in. He said he was born May 6, 1931. He said he had his draft card in his possession at the time the officers questioned him and the only other means of identification then in his possession was his Social Security card. He said when he and two other men with him sat down, after hanging up their coats, the waitress asked them what they would have and one of the men told her "three beers", and neither she nor anyone else asked his age. He said he was not stopped at the door and asked to show a card, and was not sent to the place.

For the defense, Officer Albert Usol, of the Baltimore Police Department, testified that he had been in the Cicero night club in uniform about ten or fifteen minutes when he saw Petro enter the place with two other men. Petro was stopped at the door by Salvatore Cicero, who asked him for a card. He did not see the card. He had seen many who tried to enter the place refused entrance because they were not twenty-one years of age. Walter D. Hyle, Jr., a Deputy Collector of Internal Revenue for the District of Maryland, testified that he was on the premises at nine P. M. on January 11th. He observed Petro come in. He further testified: "It is customary on Friday evenings I go down to Cicero's while my wife is bowling, and about nine o'clock or shortly afterwards the man that was on the stand and two other men came in, and as it is customary Salvatore stopped the younger of the three because the other two seemed perfectly able. I am a personal friend of the Ciceros, and I stand by the door or sit by the door for the time that I am there. He stopped the boy, the boy showed him the card, and then he left him go in. Then later on while we were there that evening Mr. Irvin Kovens of the Liquor Board came in. I spoke to him for a while, and later on as I find from the testimony in the neighborhood of twelve o'clock the squad of policemen came in and made the arrest." On cross-examination, when asked whether many boys were stopped and questioned there, he replied: "Yes, many's the times I have been there, on occasions a lot of naval men come in, and invariably he will turn out one who is a minor, and lose the trade of four or five who are of age." Salvatore Cicero, testifying for the defense, said that he arrives at the night club every night at six o'clock. He sits on a stool at the door and checks everyone who comes in and out. He stopped Petro because "of his nationality and his olive complexion, a little doubtful in my mind". He had questioned the other two men when they have been in the place previously. He stopped Petro as he entered

and asked for his card which showed that he was born in 1929. During his testimony, when shown the draft card which Petro had shown the police, he said: "That is not the card. The reason I can say right off hand is because this card was folded up in four ways. The card was taken out of his watch pocket. The card was taken out of his jacket, and he never checked the coat." The appellants did not testify.

The trial judge, in finding the appellants guilty said: "I think Cicero could have used more care. I don't believe he used enough care. I don't believe the man that the boy had another card because in the natural course of events if he had another card he would have produced it to the police. I don't know why he would have produced the good card to the police if he had a wrong card to present to Salvatore. That wouldn't be human nature. If he had a good piece of evidence there I believe he would have produced the good piece that was for him to produce to the police, not the worst piece. * * * If there is a question of doubt I think it means a study of that person and more precautions than I think were taken in this case. I think the greatest precaution he could have taken, when the boy looks to me as young as he looks, was to say go some place else. I think he should have turned him down squarely, and I think that is what the tavern keepers in this town ought to do; if there is any doubt in their minds turn them out. That is my view of it. It is too serious to speculate on the situation and take a chance, if there is any doubt at all in their minds. A man can't do any more than express his displeasure, and that is his fault for looking so young that he has to prove it by some kind of document."

Rule 7 (c) of the Criminal Rules of Practice and Procedure provides that upon appeal in criminal cases tried before the judge without a jury "the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the

credibility of the witnesses." *Lambert v. State,* 196 Md. 57, 75 A. 2d 327; *Edwards v. State,* 198 Md. 132, 153, 83 A. 2d 578. The appellant contends that under the statute, if any caution was used no offense was committed. This overlooks the requirement that "due caution" must be established to the satisfaction of the trier of the facts. From the evidence in this record we cannot say that the trial judge was clearly wrong in finding that the appellants sold this beer to this minor without using "due caution" to establish that such minor was twenty-one years of age. He had the witnesses before him to judge of their credibility, and what is of particular importance in this case is the fact that he had a minor before him as did the appellants.

During the trial of the case, Salvatore Cicero was interrogated as follows by the State on cross-examination: "Q. You have had considerable bad luck in selection of clients in the past few years. A. Since I have been at the door I haven't had a minor case since I have been back from Service. I will turn away fifteen or twenty if there is a minor in the crowd. * * * Q. Your father has had some bad luck on minors? A. He has. One time the girl was in there with her parents and the parents consented to her age, and she had borrowed her sister's birth certificate." This evidence was admitted without objection by the defendants. During the argument of counsel to the Court, the Assistant State's Attorney said: "They have had previous occasions. I think technically they are probably guilty, whether it is deliberate or not." The appellants claim that this remark by the prosecuting attorney was prejudicial and justifies the granting of a new trial.

It was said by this Court in *Riggin v. State,* 125 Md. 165, at page 174, 93 A. 437, at page 440: "It is of course improper for a prosecuting officer to assert his personal belief or personal conviction as to the guilt of the accused, if that belief or conviction is predicated upon anything other than the evidence in the case. But, upon the other hand, such prosecuting officer has

the undisputable right to urge that the evidence convinces his mind of the accused's guilt. Indeed, it would be mere stultification if it were contended that the prosecuting attorney could argue to the jury that the evidence should convince their minds although it did not convince his. A prosecuting officer therefore has the right to state his views as to what the evidence shows." This rule was recently reaffirmed by this Court in *Apple v. State,* (1948), 190 Md. 661, 666, 667, 59 A. 2d 509. Eee also Annotation 75 *A. L. R.* 53. In the instant case the argument of the prosecuting attorney was based upon evidence admitted in the case without objection, and therefore could not be relied upon as a "highly prejudicial remark" as in the case of *Viereck v. United States,* 318 U. S. 236, 63 S. Ct. 561, 87 L. Ed. 734, 741, commented on in the case of *Apple v. State, supra,* 190 Md., at page 667, 59 A. 2d 509. Furthermore, no objection was made to this argument by the defendants and the question of its propriety was therefore not presented to the trial judge sitting without a jury. Rule 9 of this Court provides: "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below." Code, (1951), Article 5, Section 10. It has been pointed out many times by this Court that where a party has the option to object below, and does not do so it must be held to constitute a waiver of the error and an estoppel in the Court of Appeals. Justice is served by the avoidance of delay and expenses incident to appeals and new trials which might have been obviated and corrected below if the question had been raised and ruled upon. *Davis v. State,* 189 Md. 269, 273, 55 A. 2d 702; *Swann v. State,* 192 Md. 9, 11, 63 A. 2d 324. As we find no error the judgments will be affirmed.

*Judgments affirmed with costs.*