*Dana T. Johnson v. State of Maryland*, No. 1718, September Term, 2017. Opinion by Nazarian, J.

**CRIMINAL LAW– STATUTES – SENTENCING**

Maryland Code, Criminal Law Article § 5-612 provides for a mandatory minimum sentence of five years' imprisonment without the possibility of parole for possession of controlled dangerous substances at and above specified threshold amounts. The absence of a maximum sentence in the statute does not render it ambiguous.


**CRIMINAL LAW – STATUTES – DUE PROCESS**

The absence of a maximum sentence in a statute that provides a mandatory minimum sentence does not *per se* violate a defendant's right to due process under the Fourteenth Amendment.

Circuit Court for Baltimore County
Case No. K-17-1060

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1718

September Term, 2017

_____

DANA T. JOHNSON

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Nazarian,
Eyler, Deborah S.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: February 4, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On February 9, 2017, Dana T. Johnson led police on a car chase that ended in a nearly catastrophic accident. Mr. Johnson was arrested and taken to the hospital. As medical personnel removed his clothing, police discovered a large quantity of heroin in his underwear. He was charged and ultimately convicted in the Circuit Court for Baltimore County of possession of heroin, volume possession of heroin, and attempting to elude a police officer. The court sentenced him to fourteen years' imprisonment, the first five without the possibility of parole under Maryland Code (2002, 2012 Repl. Vol. 2018 Cum. Supp.), § 5-612 of the Criminal Law Article ("CR"), which mandates a minimum sentence of five years without the possibility of parole for a volume heroin conviction.

Mr. Johnson appeals on two grounds. *First*, he argues that his sentence was illegal, and *second*, that the heroin found in his clothing was admitted improperly at trial because the State failed to establish the chain of custody sufficiently. We find the trial court properly exercised its discretion on both issues and affirm.

## I.    BACKGROUND

Officers Vicarini[1] and Brian Trussell were conducting a routine patrol when they noticed a silver Acura that had unusually darkly tinted windows. The officers stopped the Acura with lights and sirens, but as they began to exit their patrol car to approach, it sped off. The officers pursued the vehicle until they determined they could no longer do so safely, then abandoned the chase.

When they saw the Acura again some time later, the officers followed the vehicle,

---

[1] Officer Vicarini's first name does not appear in the record.

this time without activating their lights or sirens. As they followed, though, the Acura crashed into another vehicle at an intersection. Both vehicles were crushed badly; the Acura was torn literally in half. The officers approached the scene of the crash and found Mr. Johnson, the Acura's sole occupant, trapped inside and injured.

Emergency responders extracted Mr. Johnson from the vehicle and transported him to a local hospital. Officer Sean Daley, who had responded to the crash site, accompanied Mr. Johnson to the hospital and was in the room as medical personnel removed Mr. Johnson's clothing, and searched the clothes[2] as they were removed. In Mr. Johnson's undergarments, Officer Daley found a "large plastic bag containing an off while [sic] powder substance." Officer Daley held onto the bag, packaged it according to police evidence procedures, and returned to the precinct.

Mr. Johnson was charged with volume possession of heroin, possession of heroin with intent to distribute, simple possession of heroin, attempting to elude a police officer; failure to give insurance information to another driver after an accident, and failure to exhibit his license to a police officer after an accident. At the close of the bench trial, the court granted a motion for judgment of acquittal as to the possession with intent to distribute, failure to give his insurance information, and failure to exhibit his license charges. The court convicted Mr. Johnson of simple possession of heroin, volume possession of heroin, and attempting to elude an officer, merged his conviction for simple possession into the volume possession conviction, and sentenced him to fourteen years'

---

[2] Mr. Johnson does not dispute that his clothes were searched properly incident to arrest.

imprisonment, the first five without the possibility of parole.

## II.     DISCUSSION

Mr. Johnson argues *first* on appeal that his fourteen-year sentence is illegal because although CR § 5-612 provides for a mandatory minimum sentence, it does not state a maximum sentence and, therefore, failed to give him notice of a potential sentence beyond five years. We review this question of statutory interpretation *de novo. Gorge v. State*, 386 Md. 600, 610 (2005). *Second*, he contends that the trial court erred in admitting the heroin found in his underwear into evidence because the State failed to establish the chain of custody. That decision is committed to the discretion of the trial court. *Wheeler v. State*, 459 Md. 555, 645 (2018).

### A.     Mr. Johnson's Sentence Is Legal

Mr. Johnson's argument that his sentence is illegal hinges on a threshold finding that the statute under which he was convicted, CR § 5-612, is ambiguous. If statutory language is "clear and unambiguous when construed in accordance with its ordinary and everyday meaning, then this Court will give effect to the statute as it is written." *Alston v. State*, 433 Md. 275, 295–96 (2013) (cleaned up). If a statute is ambiguous, we look beyond the plain language and "consider[], in addition to the literal or usual meaning of the words used, their meaning and effect in light of the setting, the objectives and purpose of the subject enactment." *Id.* at 296.

Criminal Law Article § 5-612 defines the crime of volume possession and the mandatory minimum sentence:

3

(a) A person may not manufacture, distribute, dispense, or possess:

*\*\**

(5) 28 grams or more of morphine or opium or any derivative salt, isomer, or salt of an isomer of morphine or opium;

(6) 28 grams or more of any mixture containing a detectable amount, as scientifically measured using representative sampling methodology, of morphine or opium or any derivative salt, isomer, or salt of an isomer of morphine or opium;

*\*\**

(c) (1) A person who is convicted of a violation of subsection (a) of this section shall be sentenced to imprisonment for not less than 5 years and is subject to a fine not exceeding $100,000.

(2) The court may not suspend any part of the mandatory minimum sentence of 5 years.

(3) Except as provided in § 4-305 of the Correctional Services Article,[3] the person is not eligible for parole during the mandatory minimum sentence.

Mr. Johnson keys less on what CR § 5-612 says and more on what it doesn't. Although it establishes a mandatory minimum sentence (and removes the court's discretion to suspend any portion of it), § 5-612 does not establish a maximum sentence. Mr. Johnson contends that absence of a maximum sentence renders § 5-612 ambiguous and, from there, that its legislative history suggests that the sole intended penalty for a violation is five years' imprisonment without the possibility of parole. In other words, he argues that the minimum and maximum sentences for violating CR § 5-612 are one and the same. To find otherwise, he claims, would violate Mr. Johnson's Fourteenth Amendment Due Process

---

[3] These exceptions do not apply here.

rights and the rule of lenity.

At the time Mr. Johnson filed his opening brief, we had not yet decided *Carter v. State*, 236 Md. App. 456 (2018), which analyzed the history of CR § 5-612 in depth. As *Carter* explained, section 5-612 first appeared not as a stand-alone offense, but rather as a sentence enhancement designed to "punish more severely persons who engage in the manufacture or distribution of a high volume of drugs." *State v. Wheeler*, 118 Md. App. 142, 148 (1997). At that time, a defendant who was convicted of possession with intent to distribute a controlled dangerous substance ("CDS") would be sentenced in accordance with the enhancement provision if he possessed the specified threshold quantity or more. This threshold distinguished kingpins from smaller scale drug dealers by both creating a mandatory minimum sentence for high-volume possessors and eliminating the possibility of parole for the first five years of his total term of imprisonment.

In its original 1989 form, the statute, then codified at Maryland Code Article 27, § 286, provided that if a person possessed CDS in "sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense," it was "mandatory upon the court to impose no less than 5 years' imprisonment, and neither that term of imprisonment nor any part of it could be suspended." In the 2002 codification of the Criminal Law Article, the text remained substantively the same and was re-codified at CR § 5-612.[4] In 2005, "to avoid running afoul" of the Supreme Court's decision in *Blakely*

---

[4] In the 1989 version of CR § 5-612, the enhancement provision was a subsection within the statute criminalizing distribution, manufacture, and volume possession of CDS. *See* Maryland Code Article 27, § 286(a)(1) (1989); Maryland Code Article 27, § 286(f)(1)

*v. Washington*, 542 U.S. 296 (2004), which prohibited sentence enhancements based on facts not decided by the jury, the General Assembly repealed and revised CR § 5-612. *Kyler v. State*, 218 Md. App. 196, 224 (2014). The 2005 amended statute made the possession of a threshold quantity of a CDS a stand-alone offense rather than a sentence enhancement that still carried a mandatory minimum sentence of five years' imprisonment without the possibility of parole. *Id.* at 224. ("[T]he Committee to Revise Article 27 recommended repealing the factual penalty enhancement in the penalty provisions and to place the factual circumstances that leads to the increased penalty into the factual elements of the underlying offense *to be charged as its own, separate, new offense*." *Id.* (internal quotations omitted) (emphasis in original)).

Our decision in *Carter* disposes of Mr. Johnson's contention that the General Assembly, "perhaps inadvertently," created a new offense making mere possession of a threshold quantity of CDS punishable under CR § 5-612. *Carter* explained that "the General Assembly made clear that its intent was not to alter the elements of an existing crime, but to establish a new crime: the manufacture, distribution, dispensing, *or possession* of certain quantities of [CDS]." 236 Md. App. at 479 (emphasis added). And, moreover, the historical language of the statute *did* include mere possession of a threshold quantity of CDS as a trigger to the mandatory minimum sentence: "it is unlawful for any person . . . [t]o manufacture, distribute, or dispense, *or to possess* a [CDS] in sufficient

---

(1989); Maryland Code Article 27, § 286(f)(3)(i)–(ii) (1989). In 2002, the enhancement provision became a separate section entirely at CR § 5-612.

quantity to indicate under all circumstances an intent to manufacture, distribute, or dispense, a [CDS]." Maryland Code Article 27, § 286(a)(1) (1989) (emphasis added). There has never been a requirement to find a subjective intent to distribute independently, and we do not read in such a requirement now.[5]

Nor does anything in CR § 5-612's origins as a sentence enhancement provision indicate that the mandatory minimum is also the sentencing cap. Had that been the General Assembly's intention, it could have eliminated the word 'minimum' from the statute, which implies a variety of options beginning at a given, minimum, point. Mr. Johnson's reading of 'minimum' would strip trial judges of their very broad sentencing discretion in this context and provide no leeway to account for the factual differences between cases. *Jones v. State*, 414 Md. 686, 693 (2010). As *Carter* explained, CR § 5-612 unambiguously criminalizes high volume possession without the intent to distribute, and the absence of ambiguity means we need not reach Mr. Johnson's rule of lenity argument. *Jones v. State*, 336 Md. 255, 261 (1994) ("The rule of lenity [] is a maxim of statutory construction which serves only as an aid for resolving an ambiguity and it may not be used to create an ambiguity where none exists.").

That leaves Mr. Johnson's argument that a sentencing statute specifying a mandatory minimum without specifying a maximum *per se* violates his rights to due

---

[5] We noted in *Carter* that the heading of CR § 5-612, "Volume Dealer" is misleading. Captions and headings are not part of the statutory language, "[i]ndeed, they have no role whatsoever in our interpretation and application of Maryland law" and "cannot render an otherwise unambiguous statute ambiguous." *Carter*, 236 Md. App. at 482.

process. The Due Process Clause of the Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. All court proceedings, including sentencing, "are to be tested by fundamental fairness – the touchstone of due process." *State v. Bryan*, 284 Md. 152, 159 n.6 (1978). "It is a settled principle in Maryland criminal law that fundamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions." *Alston*, 433 Md. at 292 (quoting *Robinson v. Lee*, 317 Md. 371, 379–80 (1989)). And sentencing provisions that fail to "state with sufficient clarity the consequences of violating a given criminal statute" may be invalid on constitutional grounds. *U.S. v. Batchelder*, 442 U.S. 114, 123 (1979).

But CR § 5-612 suffers from no such failure of clarity. Mr. Johnson cites no cases, nor have we found any, finding a due process problem from the absence of a defined maximum sentence.[6] Instead, he relies on the Supreme Court's decisions in *U.S. v. Batchelder*, 442 U.S. 114, 123 (1979), and *Beckles v. U.S.*, 137 S. Ct. 886, 892 (2017), for the general proposition that sentencing provisions are unconstitutionally vague when they fail to specify the activity proscribed and the consequences for violating them. But the plain language of CR § 5-612 provides both. Mr. Johnson was on notice that it was illegal to possess the large quantity of heroin he had on his person. He was also on notice that the violation of the statute would result in an automatic *minimum* penalty of five years'

---

[6] He mentions in passing Article 24 of the Maryland Declaration of Rights, but didn't brief it and we don't consider it.

imprisonment, and from a due process perspective, it doesn't matter that the statute didn't cap the potential punishment. And this makes sense in light of our centuries-long experience with common-law crimes, which have never been successfully challenged on due process grounds despite having no sentencing boundaries at all. *Walker v. State*, 53 Md. App. 171, 186 (1982) ("The common law penalty is anything in the discretion of the sentencing judge, provided only that it not be 'cruel or unusual.'"); *Heath v. State*, 198 Md. 455, 467 (1951); *Apple v. State*, 190 Md. 661, 668 (1948). The Eighth Amendment is always there to guard against Constitutionally excessive sentencing, but the absence of an upper sentencing bound did not deprive Mr. Johnson of due process.[7]

Against that backdrop, we find that the court properly exercised its discretion in sentencing Mr. Johnson. The sentence complied with the mandatory minimum in CR § 5-612, and in the absence of a specific maximum, was consistent with the recommendations of the State based on the sentencing guidelines, the severity of Mr. Johnson's offense and the circumstances surrounding it, and Mr. Johnson's extensive criminal record of drug-related convictions and violations of probation.

**B.      The Circuit Court Properly Found The Chain of Custody Sufficient For The Heroin Found In Mr. Johnson's Clothing.**

For physical evidence to be admissible, "the law requires the offering party to establish the 'chain of custody', *i.e.*, account for its handling from the time it was seized

---

[7] Mr. Johnson also claimed in his brief that CR § 5-612 violates his rights under Article 24 of the Maryland Declaration of Rights, the state's equivalent of the Due Process Clause. He did not make any argument independent of his federal constitutional claim or suggest it would compel a different result. Any other state constitutional claims were not raised and are waived.

until it is offered in evidence." *Lester v. State*, 82 Md. App. 391, 394 (1990). This requirement ensures physical evidence has been properly identified and that it is in substantially the same condition as it was at the time of the crime. *Amos v. State*, 42 Md. App. 365, 370 (1979). Mr. Johnson argues that the State failed to establish an adequate chain of custody because the State didn't call at trial the nurse who removed Mr. Johnson's clothing and "seized" the CDS from him. We review the trial court's finding for abuse of discretion. *Wheeler v. State*, 459 Md. 555, 645 (2018).

The chain of custody need not be established beyond a reasonable doubt—the State need prove only that there is a "reasonable probability that no tampering occurred." *Cooper v. State*, 434 Md. 209, 227 (2013) (*quoting Breeding v. State*, 220 Md. 193, 199 (1959)). At trial, the State called Officer Daley, who testified about how he searched Mr. Johnson's clothes as the medical team removed them:

> Once we arrived, he was taken into the, the trauma section of the hospital at Sinai . . . . [Doctors and nurses are] evaluating his condition and all those other things and as part of that they removed clothing while I was there . . . . As they removed those pieces of clothing, I searched them because he was in custody, he was under arrest, search incident to arrest, I searched his belongings as they came off of him. When it got to his undergarments, it was removed, as I searched it, a large plastic bag containing an off while [sic] powder substance was found in the crotch area of his undergarments.

The State then sought to admit the bag of powder into evidence and defense counsel objected:

> Chain of custody. There's been some testimony that the nursing staff was, had some connection to this bag and nobody from the hospital's nursing staff has been called yet.

10

The court initially reserved the question to allow Mr. Johnson the opportunity to cross-examine and develop his argument. On cross-examination, Officer Daley reiterated that the nurse removed Mr. Johnson's clothing in the hospital and that as each item was removed, he searched it, and that he ultimately found the plastic bag of heroin hidden in Mr. Johnson's underwear. After Officer Daley's testimony, the State renewed its request to admit the bag of powder into evidence and Mr. Johnson, again, objected. The trial court admitted the bag into evidence:

> [B]ased on the testimony I've heard so far, I am satisfied that the chain of custody has not been breached. There has been no testimony that anyone other than Officer Daley touched the suspected [CDS] at the time of recovery so there has been no evidence of any interruption in the chain of custody, that he recovered and that he submitted it for submission to the Evidence Control Unit so I'm going to overrule your objection . . . .[8]

Mr. Johnson points to Maryland Code (1974, 2013 Repl. Vol.), § 10-1003 of the Courts and Judicial Proceedings Article ("CJP"), which requires the State to produce any person in the chain of custody as a prosecution witness upon the defendant's written demand. But Mr. Johnson does not indicate that he made any such written request, nor does the record reveal one. And the State offered testimony from each of the individuals in the "chain of custody" defined in CJP § 10-1002, *i.e.*, "(i) [t]he seizing officer; (ii) [t]he packaging officer, if the packaging officer is not also the seizing officer; and (iii) [t]he chemist or other person who actually touched the substance . . . before or during the

---

[8] Mr. Johnson renewed his objection at the close of the State's case and the court denied it again for the same reasons.

11

analysis of the substance." Officer Daley was both the seizing and packaging officer in this case. The forensic chemist who tested the contents of the bag and found that it contained heroin testified as well. And from those witnesses, the trial judge determined, appropriately, that no one other than Officer Daley had handled the bag of powder before it was packaged and submitted to the crime lab for analysis. The evidence permitted the trial court to find that that there was no gap in the chain of custody, and we see no error in the court's denial of Mr. Johnson's requests to exclude the evidence recovered at the hospital.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**