# FEBRUARY, 1925.

## Jim Reynolds v. The State.

No. 7967. Delivered February 20, 1925.

Rehearing granted June 26, 1925.

1.—Manslaughter—Evidence—Properly Admitted.

Where on a trial for manslaughter the state was permitted to ask an eyewitness to the homicide, "Did you see him attempt to strike the defendant or harm or injure him" we do not think an objection to such question to be sound. It was but what has frequently been called a "shorthand rendering of the facts," a statement embracing the proposition that he did not see

the deceased do anything amounting to an attempt to strike, harm, or injure the appellant, and was properly admitted.

**2.—Same—Evidence—Cross-Examination—Of Appellant—Held Proper.**

Where on a trial for murder, the defensive issue being illicit relations between deceased and appellant's wife, the state was properly permitted on cross-examination to enquire of appellant his knowledge of such relation, prior to the time that he testified that his wife admitted to him that she had had such relations with the deceased.

**3.—Same—Evidence—Rejection of—Harmless.**

Where on a trial for murder, testimony offered by appellant and excluded on objection, that appellant was living at home with his wife and children at the time of the homicide, was not pertinent, and if pertinent, in the instant case the fact was proven by other evidence, and was uncontradicted by the State.

**4.—Evidence—Rejection of—Harmless.**

The rejection of evidence, which could have been material only as affecting the relations between appellant's wife, and deceased, discovery of which was relied upon to reduce the offense to manslaughter, is harmless where the conviction of appellant is only for manslaughter.

**5.—Same—Witness—Impeachment of—Held Proper.**

It was proper to permit the State to prove that the witness Mrs. Vera Blackwell introduced by the appellant, had been convicted of keeping a disorderly house, as affecting her credibility. Such offense involves moral turpitude, and is admissible. Following Bird v. State, 148 S. W. 738. Bogue v. State, 155 S. W. 943.

**6.—Same—Evidence—Objections to—Bill of Exception—Rule.**

Where appellant offers to prove by a witness, a general conversation between such witness and deceased, and on objection by the State no reason for the objection being assigned and appellant, failing at the time of such ruling to state to the court what said witness would have testified to, no error is presented in the rejection of such testimony. See Graham v. State, 281 S. W. 563, and other cases cited. On rehearing this proposition is dissented from by a majority of the court.

**7.—Same—Evidence—Cross-Examination of Appellant—Harmless, if Error.**

Where the state on cross-examination of appellant, was permitted to ask him as to a conversation between him and his wife some hours after the killing in which she cursed him, and told him he had killed the wrong man. Having answered the questions in the negative, and the State pursuing the matter no further, the error, if any was harmless.

**8.—Evidence—Not Pertinent—Properly Excluded.**

That the deceased had been asked by a witness to move from her place because he used vile language on the premises, and would not pay his rent, would manifestly be of no benefit to the case of appellant, and was properly excluded.

**9.—Same—Evidence—Statement to Appellant—Properly Admitted.**

Statement by an officer made to appellant a short while before the homicide made to him by said officer, after he had seen the deceased, badly beaten up, that he, (appellant) had better be careful, that he was going to get into trouble and might be sent to the penitentiary, was properly admitted, it being

101 Tex. Crim.—13.

shown without controversy that appellant had had a fight with deceased at this time.

### ON REHEARING.

**10.—Same—Evidence—Erroneously Excluded—Bills of Exception—Practice.**

On re-examination a majority of the court is of the opinion that in our original opinion we were in error in holding that the trial court properly excluded the testimony of Mrs. Moore, as presented in appellant's bill of exception No. 14. Her testimony as set out in the bill, would have corroborated appellant's testimony as to threats made by deceased, testified to by appellant alone, and this testimony was erroneously excluded. See Bereal v. State, 88 Tex. Crim. Rep. 138, and other cases cited.

**11.—Same—Bill of Exception—To Exclusion of Evidence—Practice.**

Where testimony is offered by appellant and on objection by the State, without any grounds therefor being stated, is excluded, and the bill of exceptions presenting the, matter, sets out the facts which would have been testified to, and such bill is approved by the trial court without qualification, the complaint of the exclusion of the testimony will be considered. If the court, in the instant case was not apprised of what the proposed testimony was, he does not so certify in approving the bill, and the testimony was erroneously excluded.

**12.—Same Bill of Exception—To Exclusion of Evidence.**

It is true that appellant's bill contains certain statements made by Mrs. Moore to deceased, which were probably not admissible unless necessary to make clear deceased's statements in response thereto, but the State's objections, being general only, not specifying the portion which might be excluded upon specific objections, does not support the court's ruling in excluding it all. See Hughes v. State, 152 S. W. 912, Pinkston v. State, 160 S. W. 87 and other cases collated under Sec. 211, Branch's Ann. P. C.

#### CONCURRING OPINION

Where a trial court approves without qualification a bill of exception, taken to the exclusion of testimony offered by appellant, which contains the the specific statement in the bill showing the testimony which the appellant expected to elicit from the witness, the bill fairly interpreted shows that the trial judge regarded the proffered testimony inadmissible, and purposely rejected it, over the objection of the appellant, properly made, at the time.

Appeal from the Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction of manslaughter; penalty, five years in the penitentiary.

The opinion states the case.

*McLean, Scott & Sayers* and *Black & Morrow,* for appellant.

*R. K. Hanger,* District Attorney, *Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, Judge.—Appellant was convicted in the Criminal District Court of Tarrant County of manslaughter, and his punishment fixed at five years in the penitentiary.

It appears from the record practically without dispute that deceased and appellant's wife had been criminally intimate. Appellant testified that shortly before the homicide his wife confessed to him her relations with deceased following which his mind was in such a condition that he was hardly conscious of his actions. The shooting occurred in the morning as deceased was on his way to his work. The scene was laid at Ninth and Main Streets in the city of Fort Worth. According to State witnesses deceased was crossing said street going east toward his place of employment when observed by appellant, who thereupon took two or three running steps in the direction of deceased and in his rear and fired his pistol a number of times. Even after the officers had gotten hold of appellant he continued to fire until his pistol was empty. Appellant's own story of the immediate facts was that he was going east himself at said street crossing and observed deceased with his hand in his side pocket looking at him (appellant) and that he at once pulled his pistol and began shooting. Many bills of exception might have presented different aspects if the conviction had been for a higher offense than manslaughter.

State witness Howard was asked with reference to the deceased: "Did you see him attempt to strike the defendant or to harm or injure him in any way?" We do not think the objection to this sound. It was but what has frequently been called a shorthand rendering of the facts, a statement of the witness succinctly embracing the propostion that he did not see the deceased do anything amounting to an attempt to strike, harm or injure the appellant.

Bills of exception Nos. 4, 5, 6, and 7 present the objection of the defense to questions asked of the appellant while a witness, the purpose of which was to elicit his knowledge, if any he had, of his wife's relations with deceased and a man named Harry ——, prior to the time of the claimed confession by the wife of appellant of her guilty relation with deceased shortly before the killing. All the questions asked as set out in said bills were answered in the negative, and the record reflects no attempt to pursue the matter further, and in our opinion none of the objections are tenable.

By his bill No. 9 appellant sets out the rejection of offered testimony that at the time of the trial he was living at home with his wife and children. The statement of facts contains in the direct testimony of appellant his statement that at the time of trial he was living at his home with his wife. If no such contradiction appeared in the record, we would still conclude ourselves unable to detect the pertinence of the testimony to any issue in this case.

Bills of exception Nos. 10 and 11 complain of the rejection of evidence which could have been material only as affecting the relations between appellant's wife and deceased, discovery of which

was relied upon to reduce the offense to manslaughter. The conviction being only for that grade of homicide, rejection of the testimony would be held harmless.

Mrs. Vera Blackwell for the defense swore that deceased and appellant's wife had on several occasions occupied a room at her hotel. The State had said witness admit that she had been arrested and charged in the courts with keeping a disorderly house. The testimony of said witness only going to establish facts reducing the case to manslaughter, and the jury having accepted that theory and found a verdict only for that offense, if error appeared in the reception of the evidence, we would hold it harmless, but under our authorities keeping a disorderly house is an offense involving moral turpitude and the testimony was admissible as affecting the credibility of the witness. Bird v. State, 148 S. W. Rep. 738; Bogue v. State, 155 S. W. Rep. 943.

From bill of exceptions No. 14 it appears that appellant placed Mrs. Moore on the witness stand and asked her if shortly prior to this homicide she had a conversation with deceased concerning the wife of appellant, to which the witness replied in the affirmative. She was then asked by the defense the following question: "What did you tell him and what did he say to you?" The court sustained the State's objection, no reason for the objection being assigned. In 142 S. W. Rep. appear court rules for district and county courts of this State, and part of Rule 57 is as follows: "Exceptions to the admission of evidence on trial where no reason is assigned for objection to it, shall not be sustained where the evidence is obviously competent and admissible as tending to prove any of the facts put in issue by the pleading." As applied to this case, we observe that manifestly what was said to the deceased by the witness, and by the deceased to said witness with reference to the wife of appellant, would not be "obviously competent and admissible",—and certainly there could be nothing in such question to apprise the learned trial court of the fact that what appellant really wanted was testimony of part of said conversation relating to appellant himself. When the question objected to did not call for an answer so "obviously competent and admissible", it devolved upon appellant to ask for what he wanted in such form as to reasonably make same appear, or else inform the court as to how the question asked led up to or was related to some material matter. Graham v. State, 28 Tex. Crim. App. 582; Coyle v. State, 31 Texas Crim. Rep. 606; Lookman v. State, 32 Texas Crim. Rep. 562; Martin v. State, 32 Texas Crim. Rep. 443; Welch v. State, 57 Texas Crim. Rep. 118. In Levine v. State, 35 Texas Crim. Rep. 648, appears the following statement:

"Because testimony is admissible for some purpose, it does not follow that it is introduced for such purpose, and it may not occur

to the court before whom the testimony is presented, that it is admissible. Hence the object and purpose of the testimony should be stated to the court, in order that the lower court may be enabled to rule correctly as to its admissibility, and, if the evidence be reject-ed, this purpose should be stated in the bill of exceptions."

Other authorities will be found collated in Sec. 48 of Mr. Branch's Criminal Law. We think the rule a sound one. A conversation between the witness and another party, proffered without explan-atory statement or obvious relevance, was properly rejected, and error could not be injected into the action of the court by a state-ment in the bill of exceptions that said witness would have pursued the conversation to a point where same would have been related to the accused. Unless such fact had been brought to the attention of the trial court.

There is a bill complaining that the State asked appellant as to a conversation had between him and his wife some hours after the killing in which she cursed him and told him he had killed the wrong man. When asked about this appellant denied having had such conversation. This ended the inquiry. The obvious purpose of the question was to affect the issue of manslaughter. The verdict shows the futility of the effort on the part of the State and renders harm-less the error, if any.

Proof that a witness asked deceased to move from her place be-cause he used vile language on the premises and would not pay his rent, would seem manifestly of no benefit to the case of appellant.

Bill No. 17 as to statements of the assistant district attorney in urging the admissibility of certain testimony, if susceptible of injury in any event, would be harmless because same tended merely to show that the State had other witnesses and other evidence to combat the proposition that the homicide was under circumstances reducing it to manslaughter.

We are unable to perceive the weight of the objection by the defense to testimony for the State given by an officer to the effect that not long before the homicide he saw deceased who had been badly beaten up, and later he saw appellant and told him that he had better be careful, that he was going to get into trouble and might be sent to the penitentiary. It appears without controversy that appellant had had a fight with deceased before this time.

Bill No. 19 presents appellant's objection to testimony as to a statement made by him to officer Mansker before the homicide in which he said that he would not be sent to the penitentiary because his father had too much money. This seems to have been objected to on the ground that it was an attempt to impeach on an immaterial matter, was hearsay, irrelevant and immaterial. The declaration was one made by the accused and no predicate was necessary: neither

would the objection that it was hearsay apply. Objection on the ground of irrelevancy and immateriality would be too general.

We have carefully reviewed all of the objections made and shown in the record and as discussed in the able brief on behalf of appellant and find ourselves unable to agree that reversible error appears in any of them or that they reflect the fact that a fair and impartial trial was not accorded to the accused.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists that we should have considered his bill of exceptions No. 14. A re-examination of the question, in view of the authorities to which we have been referred in argument on the motion, has convinced us that we were in error regarding this matter. The bill recites that an effort had been made by the State to show that the improper relation between deceased and appellant's wife was the result of her advancements rather than deceased's; that two weeks before the homicide the wife was in the hospital sick, and that appellant found deceased visiting her there and a fist fight resulted; that appellant told deceased to leave the wife alone; that two or three nights before the killing and after deceased had been warned to stay away from the wife, appellant saw deceased in company with appellant's wife on the streets of Fort Worth; that appellant had testified that on the night prior to the killing his wife told him she had been having intercourse with deceased, who had persuaded her into such relations, and told him to be careful as deceased was carrying a gun; that appellant had testified that immediately prior to the homicide he saw deceased with his hand in his side pocket looking right into appellant's eyes, and that he believed deceased intended to harm him from the information his wife had given him. Before Mrs. Moore was tendered as a witness, appellant had testified that his wife had told him that deceased had said he would not give her up, that she could not leave him, and if she did he would shoot appellant; that his wife warned him to be particular with deceased, that he was carrying a gun; that she had seen him with it, and that he claimed to be out of the army and could handle a gun well. All of these matters were in evidence before Mrs. Moore was tendered, and the substance of it is recited in the bill advising this court of the status of the case when the witness was offered. The witness testified that a short time before the killing she had a conversation with deceased in which he made certain statements relative to Mrs. Reynolds. She was then asked, ''What did you tell him (deceased) and what did he say to

you?'' The State interposed objection without stating any grounds therefor, which was sustained and Mrs. Moore's further evidence excluded. The bill recites that she would have testified that deceased had admitted improper relations with Mrs. Reynolds, said he loved her, and was going to get a divorce for her, take her away from appellant and marry her, and that he would continue his relations with her until he could get appellant out of the way, and would either kill appellant or be killed before he would give her up. The bill is approved without qualification or explanation. If the court was not apprised of what the proposed testimony was, he does not so certify. It is true this bill contains certain statements made by Mrs. Moore to deceased which were probably not admissible unless necessary to make clear deceased's statements in response thereto, but the State's objection being general only, not specifying the portion which might be excluded upon specific objection, does not support the court's ruling in excluding it all. Hughes v. State, 152 S. W. Rep. 912; Pinkerton v. State, 160 S. W. Rep. 87. (Other authorities are collated under Sec. 211, Branch's Ann. P. C.). The statements made by deceased to Mrs. Moore, and the threats contained therein, were not communicated to appellant, hence in no way operated on his mind at the time of the killing, nor added significance to the incident that deceased was claimed by appellant to have had his hand in his pocket at the time. The wife was not used as a witness. Appellant's testimony alone put self-defense in the case based upon threats communicated by his wife and deceased's acts at the time of the homicide. As to deceased's acts, there was direct conflict between appellant's evidence and the officer who was an eyewitness to the killing. The only threat from deceased of which the jury knew came through the wife, a source always subject to more or less doubt in cases like the present, and reached the jury through appellant's testimony alone, a medium subject to suspicion. If the statement and threat by deceased to Mrs. Moore,—couched in language very similar to that conveyed to appellant by his wife as having been made to her by deceased,—had been permitted to go to the jury, it would have corroborated the communicated threats and added to the probability of an acceptance by them of the truth of a similar threat to the wife upon which appellant claimed to act, and which bore directly upon the issue of self-defense. Bereal v. State, 88 Texas Crim. Rep. 138, 225 S. W. Rep. 252; Powers v. State, 88 Texas Crim. Rep. 457, 227 S. W. Rep. 671; Corpus Juris, Vol. 30, p. 241; Levy v. State, 28 Texas Crim. App. 203.

The motion for rehearing is granted, the judgment of affirmance set aside, and the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

### CONCURRING OPINION.

MORROW, Presiding Judge.—The action of the trial court in approving without qualification Bill of Exceptions No. 14, in connection with the specific statement in the bill showing the testimony which the appellant expected to elicit from the witness impresses the writer with the opinion that, without violence to the rules of procedure, the bill fairly interpreted, shows that the trial judge regarded the proffered testimony inadmissible and purposely rejected it, over the objection of the appellant, properly made at the time.

### DISSENTING OPINION ON MOTION FOR REHEARING.

LATTIMORE, Judge.—Appellant's bill of exceptions No. 14 shows that a Mrs. Moore was on the stand as a witness for appellant, and had said that she had a conversation with deceased regarding the wife of appellant, and was then asked: ''What did you tell him and what did he say to you?'' The State objected without giving any ground therefor, and the court sustained the objection.

The bill of exceptions does not state that appellant then stated to the court what he expected the witness to answer but merely sets forth that ''Had she been permitted to answer and testify she would have stated that a short time prior to the homicide and on *two different occasions* she had a conversation with deceased, etc.'' Then follows at length what deceased should have said on both occasions as well as what she said to him. If appellant did not state to the court at the time what his expected answer was,—the question obviously calling for a purely hearsay conversation between deceased and a third party,—so as that the court could have acted advisedly upon the question of whether the expected answer was admissible or not, under all the authorities the action of the court below in rejecting the testimony should be upheld. He who asserts error must affirmatively show same by his bill of exceptions. All presumptions are in favor of the correctness of the rulings of the lower court. My Brethren say that hte court does not state in the bill that the expected answer was not then set before him. He is not required to so state, and to hold that he must,—is to cast aside the uniform presumption in favor of the correctness of the lower court's rulings and to shift to his shoulders the burden of showing the correctness of his action. This, to my mind, is a clear reversal of all our procedure and opinions in this regard.

In addition to the failure of the bill to state that the trial court was then apprised that the witness would state as follows, etc., the averment as to what the witness would have answered as stated in in the bill, makes clear that such averment is not as to what was then

stated to the court, but is of what was later inserted in the preparation of the bill. When the bill shows that in answer to the specific question, ''What did you tell him and what did he say to you,'' witness would have testified that a short time before the homicide and on two different occasions, etc., *  *  *  deceased told her, etc., this so plainly states a purported answer which, if then put before the court as being that expected, would have promptly called from the court a sustaining of the objection, and seems to be a matter so plain as not to require argument or analysis.

Again, the lengthy statement set out as the substance of the two conversations which the witness was expected to state in answer to the question, comprised much of a lecture purported to have been given deceased by witness Moore. This would under no theory have been admissible. When a blanket bill of exceptions is taken to evidence, part of which is proper and part not, we always uphold the action of the trial court in the matter. I cannot sanction the rule here laid down in either particular. The motion for rehearing should be overruled. My Brethren not agreeing with me, I respectfully record my dissent.