511 A.2d 548
**Gene MATTHEWS**

v.

**STATE of Maryland.**

No. 1467, Sept. Term, 1985.

Court of Special Appeals of Maryland.

July 10, 1986.

Certiorari Denied Dec. 5, 1986.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and April Gluckstern, Asst. State's Atty. for Baltimore City, on brief), Baltimore, for appellee.

Argued before GARRITY and ALPERT, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ALPERT, Judge.

Gene Matthews, appellant, was charged with robbery with a dangerous and deadly weapon, assault, and the use of a handgun in the commission of a crime of violence.[1] A jury in the Circuit Court for Baltimore City, with Judge Kenneth Johnson presiding, convicted appellant of assault and the weapons charge, but acquitted him of robbery with a dangerous and deadly weapon. Appellant received concurrent sentences of 15 years for assault and 20 years for the handgun offense.

This appeal followed.

The facts of this case, as revealed through the testimony of the victim, Lottie Graves, were as follows:

At 1:00 a.m. on August 19, 1984, Ms. Graves was returning home from the store when she encountered appellant, Rodney Carter, and a third person.[2] These individuals

1. Various other charges were nolle prossed as to the victim Graves. A charge of assault against Earl Frazier was disposed of by the granting of a motion for judgment of acquittal.

2. The third person was not charged with any offense.

accompanied Ms. Graves to the apartment she shared with her boyfriend, Earl Frazier, who was also acquainted with the appellant and Carter.

Shortly after they arrived at the apartment, Ms. Graves observed Carter threaten Frazier with a gun. Carter allegedly then turned the gun on Ms. Graves and ordered her to sit with Frazier in a chair in the kitchen. Carter then, according to Ms. Graves, instructed appellant and the other individual to remove an aquarium from the apartment. Carter then gave the gun to appellant and picked up a bat and, wielding it at Graves, ordered her to take off her ring. She complied, and he placed the ring in his pocket.

Next, Ms. Graves testified, appellant ordered her to go into the bedroom and told her to undress. He asked her if she performed fellatio and when she replied that she did not, he hit her across the face with the gun. Appellant then took her into the living room and instructed her to have sex with Carter and the third man, but she refused. Ms. Graves testified that appellant then struck her with the gun. Thereafter, Carter approached Graves (who was in the shower) and instructed her to go to an apartment upstairs and call the police. Carter further instructed her to leave his name out of the report.

According to Ms. Graves, she did telephone the police but they never came. The following day, at the request of her mother, she went to the hospital. There, hospital personnel called the police.

Appellant's arguments are threefold:

    I.   The trial court improperly restricted appellant's ability to cross-examine and impeach state witnesses.

    II.   The trial court erred when it refused appellant's jury instruction.

  III.   Appellant's sentence for assault is illegal.

Because we believe that the trial court did indeed unduly restrict cross-examination of one of the State's witnesses,

we shall reverse. Since the other issues could arise at retrial, we shall also address them.

## I.

In a four-pronged argument appellant asserts that the court improperly restricted appellant's ability to cross-examine and impeach the State's witnesses.

### RESTRICTION ON CROSS–EXAMINATION OF WITNESS FRAZIER

■ First, appellant contends that "[t]he trial court erred when it refused to allow defense counsel to ask about the quantities of cocaine and alcohol Frazier had used at the time of the incident." We agree.

It is axiomatic that evidence of a witness's intoxication at the time of the event about which he is testifying is admissible for the purpose of impeaching his credibility. *Wharton's Criminal Evidence* Vol. 2 § 458 (13th ed. 1973). We recognize that Frazier apparently acknowledged that he was under the influence of drugs and, further, that he had consumed alcohol on the night in question. The trial court, without explanation, sustained the State's objections to questions concerning the quantity of drugs and alcohol. Frazier was a key witness for the State. His credibility, in particular, his perception as to what occurred, was critical to the State's case. It is common knowledge that the quantity of alcohol and/or drugs consumed will affect one's ability to see, to hear, and, generally, to perceive what is occurring. The principle that a party is privileged to cross-examine a witness as to whether he was intoxicated or under the influence of drugs at the time of the incident about which he is testifying was implicitly recognized in *Dove v. State*, 33 Md.App. 601, 606, 365 A.2d 1009 (1976), *rev'd on other grounds*, 280 Md. 730, 371 A.2d 1104 (1977). There, we said:

> Generally, cross-examination is restricted to those points on which the witness had testified on direct exami-

nation. This rule is not applied to limit cross examination of the witness to specific details brought out on direct examination "but permits full inquiry of the subject matter." Furthermore, it is proper to allow any question which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or which tends to test his accuracy, memory, veracity, character, or credibility. *Seemingly, therefore, a witness may be questioned regarding whether he was sober, intoxicated, or under the influence of drugs at the time of the event in question.*

(Citations omitted) (emphasis added).

Other jurisdictions are in accord, recognizing that a witness's capacity for accurate observation and memory are impaired by intoxication and/or drug influence. *See generally Annot.,* 65 A.L.R.3d 705; Annot., 8 A.L.R.3d 479; and *Wharton's Criminal Evidence* § 458.

■ What *Dove* did not articulate, however, but what we consider an elementary principle of the right to cross examine a witness, is that a party has a further right to elicit from a witness evidence as to the *extent* of his intoxication. We find support for this statement from various other jurisdictions: *United States v. Ketchem,* 420 F.2d 901 (4th Cir.1969) (counsel should have been allowed to inquire into witness's course of drinking prior to alleged theft of car by defendant to show extent of intoxication and defense of consent); *State v. Caston,* 509 S.W.2d 39 (Mo.1974) (court erred in refusing to permit cross-examination of witness as to number of drinks consumed immediately prior to or during time events occurred); *State v. Brooks,* 1 N.C.App. 590, 162 S.E.2d 45 (1968) (proper to cross-examine witness as to quantity of alcohol he had consumed prior to incident); *State v. McKiel,* 122 Or. 504, 259 P. 917 (1927) (counsel has right to inquire as to the extent of witness's intoxication and in what way, if at all, it affected her memory); *Rector v. State,* 11 Ala.App. 333, 66 So. 857 (1914) (defendant has right to show that witness, at the time of the incident, was

under the influence of liquor and the degree or extent of his intoxication); *State v. Pemberton*, 39 Mont. 530, 104 P. 556 (1909) (proper for defendant to question witness as to sobriety at time of incident to show he was "so intoxicated" his ability to observe was impaired).

Defense counsel had the right to explore the degree of drug influence and alcohol intoxication so that the triers of the fact could decide how much weight to give Frazier's testimony. The trial court's restriction constituted reversible error.

## RESTRICTION ON EXAMINATION OF WITNESS WRIGHT

Appellant next contends that the State's witness, Tina Wright, should have been allowed to testify that Graves appeared to be under the influence of drugs.

At trial, examination proceeded as follows:

Q. Did she tell you why she came to your door?

A. Well, I was upset, because I was not well. She was doped up.

MS. GLUCKSTERN: Objection.

THE COURT: Sustained. The jury will disregard the comment. Next question.

BY MR. HENDERSON:

Q. You indicated you were upset; is that correct?

A. Yes.

Q. Why were you upset?

A. Because she was high.

MS. GLUCKSTERN: Objection.

THE COURT: Come up here, please.

The court later sustained the objection to the question whether Graves was "high."

Q. Based on your observations, those 15 years, and based on your observations of Lottie Graves, in your opinion, was she high?

MS. GLUCKSTERN: Objection.

THE COURT: Sustained.

At a later point, Wright was asked about Ms. Graves's condition, and her response was that "she was disarranged, disoriented. She was drawn. She looked like a monster from the drugs." The prosecutor lodged an objection, which was sustained, for reasons unstated by the trial judge. The State argues on appeal that when Tina Wright testified that she was upset because Lottie Graves was high, the trial court did not sustain the objection. We believe that that unfairly characterizes the record. The trial judge called counsel to the bench and subsequently admonished Ms. Wright because of her answer. While he neither sustained nor overruled the objection to the characterization of Lottie Graves as being "high," the admonition appears to have been in front of the jury and could have had the functional effect of sustaining the objection. Although the State argues that the later objection was overruled because it was cumulative, the trial judge did not assign that reason. We ought not and shall not assume, as the State would have us do, that the jury, notwithstanding the court's rulings, might perceive that Lottie Graves was "high" on the evening in question. She was the State's key witness, and her testimony was critical to the State's case. Defense counsel, had he laid the proper foundation, had the right, within certain bounds, to attempt to impeach her on the theory that she was under the influence of drugs. As stated in 2 *Wharton's Criminal Evidence* (13th ed.) § 349:

> Evidence of a witness's use of opium, morphine or a similar drug is not admissible for the purpose of impeaching his credibility, unless the witness is under the influence of such a drug while testifying or when the event to which he testified occurred.

*—foundations for lay opinion—*

In order for Wright to testify that, in her opinion, Graves was under the influence of drugs at the time of the incident, however, it was necessary for counsel to elicit sufficient facts to establish a foundation for this opinion.

*See* 31 Am.Jur.2d, *Expert and Opinion Evidence* §§ 101, 102; *Annot.,* 21 A.L.R.4th 905. This was not accomplished. Wright did not testify as to any facts surrounding Graves's appearance or demeanor upon which she could have based her conclusion that Graves was "high." As stated in 31 Am.Jur.2d at § 101:

> It is well established, therefore, that a witness who has had opportunity to observe the facts upon which he bases his opinion may give his opinion as to whether the person was intoxicated at the particular time in question. . . . Of course, though, actual observations on the part of the witness are the essential basis of the opinion on intoxication, and, in the usual and regular course, such facts must be proved as a foundation.

This rule is equally applicable to testimony that a witness was under the influence of any drug or narcotic. *Id.* at § 102. *See also Maryland & Penna. R.R. v. Tucker,* 115 Md. 43, 51, 80 A. 688 (1911), and *Symington v. Graham,* 165 Md. 441, 446, 169 A. 316 (1933). No sufficient foundation having been established, it was not error for the trial judge to exclude the witness's testimony as to whether Graves was under the influence of drugs.

## EXCLUSION OF EVIDENCE CONCERNING ALLEGED HISTORY OF PHYSICAL ABUSE BY WITNESS

Next, appellant argues that:

> The trial court erred when it refused to allow defense counsel to inquire into possible beatings of Graves by Frazier.

■ Appellant contends that had defense counsel been allowed to elicit testimony showing a prior history of physical abuse of Graves by Frazier, it could have raised a question in the minds of the jury whether Frazier and Graves had manufactured their stories in order to protect Frazier from a possible criminal charge. The denial of this line of questioning, appellant insists, deprived him of his

sixth amendment right to confront and cross-examine witnesses.

■ The State contends that the question, "If I told you I had evidence that you had inflicted those types of wounds on prior occasions, would you dispute that?" was not relevant. We agree. A question concerning whether Frazier struck Graves in the face on the date in question would have been relevant. Additionally, the question as presented by defense counsel was not followed up by a proffer as to the evidence of prior occasions and, thus, was not preserved for our review. *Mack v. State,* 300 Md. 583, 603, 479 A.2d 1344 (1984).

## ADMISSIBILITY OF PRIOR CONVICTIONS FOR IMPEACHMENT OF WITNESSES

The fourth prong to appellant's first argument has two components.

### 1.

First, appellant contends that:

The trial court should have allowed Graves to be asked about the prostitution conviction, and should have allowed her recollection to be refreshed if she did not recall it.

The record of prior conviction of Ms. Graves for prostitution was offered by co-defendant Carter's counsel, who argued that the ten-year old conviction was admissible because it was a crime of moral turpitude.

The significance of labeling a crime one involving moral turpitude is that that crime is then characterized as infamous, thus invoking the provision of Md.Cts. & Jud.Proc. Code Ann.Art. § 10–905 (1984). In the early case of *Garitee v. Bond,* 102 Md. 379, 383, 62 A. 631 (1905), it was observed:

> The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery, and those other offenses, classified generally as *crimen falsi* which impressed upon their

perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice.

*Id.* at 154 n. 1, 62 A. 631 (citations omitted) (emphasis in original); see also *Watson v. State, infra.*

The law in this state prior to *Ricketts v. State,* 291 Md. 701, 706–08, 436 A.2d 906, regarding the admission of evidence to impeach a witness through a showing of a prior criminal record was summarized in *Duckett v. State,* 61 Md.App. 151, 485 A.2d 691 (1985), *aff'd,* 306 Md. 503, 510 A.2d 253 (1986).

1.  The credibility of a witness is always a relevant issue in any case, civil or criminal;
2.  When a defendant in a criminal case elects to testify in his own defense, he subjects himself to the same rules of cross-examination that govern other witnesses;
3.  Evidence of a witness's prior conviction of an *infamous* crime is always admissible to impeach his credibility regardless of the age of that conviction.  Md. Code (1974, 1984 Repl.Vol.), § 10–905 of the Courts and Judicial Proceedings Article;
4.  The admissibility of evidence of a witness's prior conviction of a *non-infamous* crime is left to the sound discretion of the trial judge who must consider the nature of the crime and length of time since it occurred in determining the relevance of the conviction to the witness's credibility.[3]

---

**3.**  This "sound discretion" was narrowed somewhat by *Ricketts.*  We recognized in *Duckett* that "[t]rial judges presented with evidence of a defendant's prior conviction of a non-infamous crime have now been directed flatly to reject the evidence unless the *name* of the crime tends to show that a person convicted of such an offense is not to be believed under oath."  61 Md.App. at 157, 485 A.2d 691. *See also Watson v. State,* 68 Md.App. 168, 172, n. 4, 510 A.2d 1094, 1096, n. 4 (1986).

61 Md.App. at 153–54, 485 A.2d 691 (citing *Burrell v. State,* 42 Md.App. 130, 399 A.2d 1354 (1979)) (footnotes omitted) (emphasis in original).

Thus, if, as the appellant contends, prostitution is considered a crime involving moral turpitude, *i.e.,* an infamous crime, it was automatically admissible to impeach the witness Wright's testimony and it was error for the trial judge to preclude its introduction.

The extent of those offenses that can properly be said to be crimes of moral turpitude has yet to be determined. *Ricketts v. State,* 291 Md. at 707, 436 A.2d 906, *citing Dental Examiners v. Lazell,* 172 Md. 314, 320, 191 A. 240 (1937). In *Lazell,* this very question was posed:

> What is moral turpitude? Lexicographers and courts agree on the definition, but the courts do not agree in its application in characterizing offenses as involving moral turpitude.

*Id.* In search of an answer, several definitions have been advanced.[4] In *Ricketts v. State,* the Court of Appeals attempted to define infamous crimes. Infamous crimes, the *Ricketts* court noted, are those which "because they show such a lack of regard for societal norms and values, are relevant in assessing the credibility of one who has been convicted of those offenses." 291 Md. at 711, 436 A.2d 906.

The court continued:

---

**4.** Early cases discussing the common law rule governing impeachment by infamous crimes stated:
> In determining whether a crime is infamous, the test seems to be "whether the crime shows such depravity in the perpetration, or such a disposition to pervert public justice in the courts, as creates a violent presumption against the truthfulness under oath.

*Smith v. State,* 89 So. 863 (S.Ct.Ala.1901).

Further, in *Solomon v. United States,* 297 F. 82, 92–93 (1st Cir.1924), where the issue at hand pertained to the admissibility of a conviction for "keeping a house of ill fame," the common law definition regarding "infamous persons" was stated as: "persons convicted of heinous offenses [are] morally too corrupt to be trusted to testify: so reckless of the distinction between truth and falsehood and insensible to the restraining force of an oath as to render it extremely improbable that . . . [they] will speak the truth at all . . . ."

[M]oral turpitude, while being somewhat less specific than infamous crimes, still connotes such a disregard for social values on the part of the perpetrator, that one could reasonably infer that such a person's testimony is suspect.... [W]hat constitutes a crime of moral turpitude may involve different considerations compelling different results in different circumstances.

*Id.*

In *Kirby v. State,* 48 Md.App. 205, 208, 426 A.2d 423 (1981), we defined an infamous crime to be

such [a] crime as involve[s] moral turpitude, or such as render[s] the offender incompetent as a witness in court, *upon a theory that a witness would not commit so heinous a crime unless he [is] so depraved as to be unworthy of credit.*

(Citations omitted) (emphasis added).

Authorities attempting to set forth an actual definition of "moral turpitude" advance the following characterization:

An act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men or to society in general, contrary to the accepted and customary rule of right and duty between man and man.

*Black's Law Dictionary;* 21 Am.Jur.2d, *Criminal Law* § 22; 81 Am.Jur.2d *Witnesses* § 572 (moral turpitude implies something which is immoral in itself, without regard to any legal prohibition); *see generally* 21 Am.Jur.2d *Criminal Law* § 24, 25 (for a discussion of the scope of infamous crimes among the various jurisdictions); 81 Am.Jur.2d *Witnesses* § 94 (in order for a crime to be infamous, ordinarily it is not only necessary that it involve falsehood or fraud, but also that it be of such a nature as to make it probable that the party committing it is devoid of truth and insensible to the obligation of an oath).

Recognizing the aforegoing, however, brings us closer to, but does not resolve, the question at hand, *i.e.,* is prostitu-

tion an infamous crime, that is, a crime of moral turpitude, which is properly used to impeach a witness?[5]

After conducting exhaustive research, we have uncovered no case that expressly states that prostitution was considered an infamous crime *i.e.* a crime of moral turpitude at common law. Further, no Maryland statutory directive is available. We conclude, therefore, that at common law,[6] the crime of prostitution was not considered a crime of moral turpitude, and, thus, not an impeachable offense.

This conclusion notwithstanding, we recognize that there is a divergence among jurisdictions regarding the issue of the use of a prostitution conviction for impeachment. Texas, for instance, has steadfastly adhered to the position that convictions for prostitution are admissible for impeachment purposes to attack the credibility of a witness. *See Bryan v. State*, 18 Ala.App. 199, 89 So. 894, 896 (1921); *McIntosh v. State*, 91 Tex.Cr.R. 392, 239 S.W. 622, 623 (1922) (overruling *Ellis v. State*, 117 S.W. 978 (Tex.1909), which held that conviction for prostitution was not admissible for impeachment); *Chase v. State*, 97 Tex.Cr.R. 349, 261 S.W. 574 (1924); *Reid v. State*, 100 Tex.Cr.R. 512, 271 S.W. 625 (1925); *Reynolds v. State*, 101 Tex.Cr.R. 192, 274 S.W. 974 (1925); *Holgin v. State*, 480 S.W.2d 405, 409 (Tex.Cr.App.

---

**5.** Weinstein, in Weinstein's Evidence (volume 3) (1985) discussed the Congressional Report attendant to the drafting and adoption of Federal Rule of Evidence 609, quotes Ladd, "Credibility Tests, Current Trends," 89 U.Pa.L.Rev. 166, 179–181 (1941):

[S]uggesting that perjury, subornation of perjury, suppression of testimony by bribery, conspiracy to procure absence of witnesses, barratry and forgery involve falsehood. Forgery, uttering forged instruments, bribery, suppression of evidence, false pretenses, cheating and embezzlement involve dishonesty. Robbery, larceny and burglary would probably also be classified as relating to dishonesty. *But how should we classify the crime of prostitution? Dean Ladd views prostitutes as hard to associate with honesty and truthfulness—but does their profession really make them unreliable witnesses in automobile accident cases?* (Emphasis added).

**6.** *See generally Blackstone's Commentaries*, Book IV, ch. 4, pp. 64–65. *See also* 73 C.J.S., *Prostitution and Related Offenses.*

1972); *Johnson v. State,* 453 S.W.2d 828, 830 (Tex.Cr.App. 1970).

On the other hand, federal cases, in construing Federal Rule of Evidence 609(a),[7] have consistently refused to allow prior convictions for prostitution to be used to impeach a witness. Specifically, these cases hold that prostitution does not involve dishonesty or false statement. *See U.S. v. Mansaw,* 714 F.2d 785, *cert. denied,* 464 U.S. 964, 104 S.Ct. 403, 78 L.Ed.2d 343 (8th Cir.1983); *U.S. v. Walker,* 613 F.2d 1349, *cert. denied,* 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800 (5th Cir.1980); *U.S. v. Wright,* 564 F.2d 785 (8th Cir. 1977); *U.S. v. Cox,* 536 F.2d 65 (5th Cir.1976) (prostitution offense does not substantially impugn credibility as it does not entail dishonesty or false statement); *U.S. v. Evans,* 398 F.2d 159 (3rd Cir.1968); *McKune v. U.S.,* 296 F. 480 (9th Cir.1924); *Solomon v. U.S.,* 297 F. 82 (1st Cir.1924). Implicit, we feel, in the refusal of these courts to permit the use of prostitution convictions for impeachment is the understanding, as it was at common law, that prostitution is neither a crime of moral turpitude, *i.e.* an infamous crime. Given the theory behind witness impeachment, the logic of this conclusion is sound.

Clearly, the purpose of allowing the use of prior convictions for impeachment is to test the credibility of the testifying witness. *Duckett v. State,* 61 Md.App. at 153–154, 485 A.2d 691, *citing Burrell v. State,* 42 Md.App. 130, 399 A.2d 1354 (1979); *Kirby v. State,* 48 Md.App. at 207, 426 A.2d 423. Prostitution is not the type of crime (as is perjury, false pretenses, or treason) which ascribes to the

---

7.   (a) General Rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

offender an innate lack of trustworthiness due to a demonstrated act of dishonesty or deceit.

■ While we recognize that prostitution constitutes, in clear terms, conduct which is regarded as "immoral," this observation does not compel a finding that, likewise, prostitution is a crime of "moral turpitude." Immorality and moral turpitude are not synonymous and should not be equated with one another. " 'Moral' in combination with turpitude, is a tautological expression which does nothing more than add emphasis to the word 'turpitude.' " *Dental Examiners v. Lazell,* 172 Md. at 320, 191 A. 240 (citations omitted).

We share the view of the federal courts that a conviction for prostitution does not "substantially impugn the credibility" of a testifying witness. *U.S. v. Cox,* 536 F.2d at 71. Accordingly, we believe the trial judge properly concluded that the conviction for prostitution could not be used to impeach the witness. He stated his reasons:

> This court does not believe that a conviction for the offense of prostitution is a crime involving moral turpitude within the meaning of the current status of Maryland law. The mere fact that one engages in prostitution does not make one incapable of telling the truth and thus does not pertain to credibility.

Having properly determined that prostitution was not a crime involving moral turpitude or one impacting upon the witness's credibility, *Duckett v. State,* 61 Md.App. at 158, 485 A.2d 691, the trial judge did not err in excluding the evidence of the prior conviction.

■ Appellant contends that the trial judge erred in refusing to allow the witness Graves' recollection to be refreshed with a rap sheet of her conviction for prostitution. This issue was not argued in the brief, however, and we shall not decide it. *See Jacober v. High Hill Realty, Inc.* 22 Md.App. 115, 125, 321 A.2d 838 (1974); Md. Rule 1031c(5).

2.

■ Secondly, appellant argues that the trial court erred in precluding inquiry into Frazier's prior record. Again, however, appellant failed to preserve this issue for review. Although much ado was made over the existence, *vel non*, of a "rap sheet," appellant never proffered to the court any proof of the conviction which he attempted to use to impeach the witness Frazier. The issue is thus not before us. *Mack v. State, supra.*

## II.

■ Appellant next contends that the trial court erred when it refused to give the following jury instruction:

12) You are instructed that if the facts and circumstances established by the prosecution are susceptible of two inferences, one which points to innocence and the other to guilt, you are obliged to adopt that inference which points to innocence, even if the inference of guilty is equally impressive.

Appellant excepted only by number to the court's refusal to give the specific instruction. We have held that an objectionby such method does not constitute compliance with Maryland Rule 2–520(e) and, consequently, is insufficient to preserve the issue for our review. *Levitsky v. Prince George's County,* 50 Md.App. 484, 496, 439 A.2d 600 (1982).

■ Appellant also failed to comply with Maryland Rule 4–325(e), which requires that a party object, on the record, to the giving or the refusal to give an instruction promptly after the court instructs the jury, "stating distinctly the matter to which the party objects and the grounds of the objection." After the jury was instructed, appellant's counsel failed to object to the court's refusal to give instruction # 12 regarding equal inferences. Thus, appellant has failed to preserve for our review the refusal of the court to give

this specific jury instruction. *State v. Hutchinson,* 287 Md. 198, 203, 411 A.2d 1035 (1980).[8]

## III.

Appellant complains that his 15–year sentence for assault is illegal. Specifically, he asserts that, under the authority of *Simms v. State,* 288 Md. 712, 421 A.2d 957 (1980) and *Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984), the maximum sentence he could have received for the assault was ten years, which is the statutory maximum for attempted robbery, common law robbery, and assault with intent to rob. Appellant's argument, however, is based upon an erroneous reading of those two cases.

In the case at hand, appellant was charged under separate informations for the attacks on Lottie Graves and Earl Frazier. As to the offenses against Graves, appellant was charged with robbery with a deadly weapon, robbery, assault with intent to rob, assault, theft, use of a handgun in the commission of a felony, and transporting a handgun. In the second information, appellant was charged with assault on Frazier.

A motion for judgment of acquittal on the assault charge against Frazier was granted at the close of the State's case. At the close of the defense's case, the State *nolle prossed* the charges of attempted robbery with a deadly weapon, robbery, assault with intent to rob, theft, and transporting a handgun as to the victim Graves. Thus, the only charges submitted to the jury were the charges of robbery with a deadly weapon, assault, and the use of a handgun in the commission of a felony. The jury acquitted appellant of robbery with a deadly weapon, but convicted him of the latter two charges. Concurrent sentences of 20 years and 15 years were meted out.

---

8. We further hold that the failure to give the instruction was not plain error so as to allow us to consider the matter notwithstanding the failure of counsel to comply with Rule 4–325(e).

We need not address appellant's contention that, under the authority of *Simm v. State,* 288 Md. 712, 421 A.2d 957 (1980) and *Gerald v. State,* 299 Md. 138, 299 Md. 138 (1984), his 15–year sentence for assault is illegal. The facts of this case are clearly distinguishable from those in *Simms* and *Gerald* and, thus, the rule set forth in those cases is inapplicable.

The crucial factor distinguishing *Simms* and *Gerald* from the case *sub judice* lies in the factual basis for the charges of assault and armed robbery. In this case, the assault and the armed robbery arose from two different incidents. The armed robbery occurred when appellant ordered his cohorts to remove an aquarium from the living room of the apartment. The assault on Graves occurred when, in the bedroom, appellant struck Graves across the face with his gun. To the contrary, the charges of assault and armed robbery involved in *Simms* and *Gerald* arose, in both cases, from the same incident.

The rationale underlying the imposition of a "cap" on a sentence for simple assault, then, is absent from the case at hand. Contrary to the situations in *Gerald* and *Simms,* the assault and armed robbery charges, each based on different conduct, were not "deemed the same for merger and double jeopardy purposes." *Gerald,* 299 Md. at 140, 299 Md. 138. Accordingly, as there was no flagship crime for purposes of sentencing on the assault charge, it was within the discretion of the trial judge to impose the sentence of 15 years.

We further reject appellant's contention that the sentence is illegal under common law. In Maryland, assault is a common law crime for which the Legislature has not prescribed a penalty and for which no limitation existed at common law. *Raley v. State,* 32 Md.App. 515, 526–27, 363 A.2d 261, *cert. denied,* 278 Md. 731 (1976), *U.S. cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1060 (1977) (citation omitted). If the sentence is within limits prescribed by law, it ordinarily may not be reviewed on appeal. *Id.* at 527, 363 A.2d 261.

■ The single restriction on the discretion of the trial judge in sentencing a defendant for assault is found in the constitutional prohibition against cruel and unusual punishment. The Court of Appeals explained in *Simms v. State,* 288 Md. at 714, 421 A.2d 957,

> The only limitation upon the number of years of imprisonment to which one may be sentenced for assault is, ordinarily, the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution and Article 16 and 25 of the Maryland Declaration of Rights.

This constitutional safeguard is not offended by the imposition of sentences of varying degrees for assault. The reasonableness of a sentence for assault is dependent upon the individual facts of the case before the court. *Walker v. State,* 53 Md.App. 171, 195, 452 A.2d 1234, *cert. denied,* 296 Md. 63 (1983); *Apple v. State,* 190 Md. 661, 668, 59 A.2d 509 (1948).

■ We note that sentences for as much as 20 years for assault have consistently been upheld against 8th Amendment challenges. *See, e.g., Walker v. State, supra* 53 Md.App. at 195, 452 A.2d 1234; *Brown v. State,* 38 Md.App. 192, 379 A.2d 1231 (1977); *Raley v. State,* 32 Md.App. at 515, 363 A.2d 261. As we said in *Walker, supra:*

> As to excessiveness (proportionality), that can never be litigated in the abstract but must be assessed on a case-by-case basis. That an extremely lengthy prison sentence might be disproportionately excessive for most common law assault convictions does not establish, as a bright-line formula, that it would be disproportionately excessive for all common law assault convictions. We measure proportionality not by comparing the sentence with the label of the crime (that the sentence be within legal limits is a legal problem, not a constitutional problem) but by comparing the sentence with the behavior of the criminal and the consequences of his act. *As an abstract proposition,*

*no term of years for common law assault is per se and universally unconstitutional.*

53 Md.App. at 193, 452 A.2d 1234 (emphasis added).

Presented with the facts of this case, the trial judge, in the exercise of his discretion, determined that a 15 year sentence for assault was proper. We cannot say that the sentence is so "rare and severe," *Turner v. State*, 45 Md.App. 168, 171, 411 A.2d 1094 (1980), so as to constitute cruel and unusual punishment. Had we not reversed the convictions, we would have upheld the sentences.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY; COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE MAYOR AND CITY COUNCIL OF BALTIMORE.

GARRITY, J., dissents with opinion.

GARRITY, Judge, dissenting.

I respectfully dissent from the majority's opinion that the trial court's refusal to allow defense counsel to cross-examine Earl Frazier about the quantities of drugs and alcohol he had consumed prior to the incident was prejudicial error.

The appellant was convicted of assault and use of a handgun in the commission of a crime of violence.

The record reflects Lottie Graves's testimony that in the early morning hours of August 19, 1984, she, Earl Frazier, the appellant and two other men were in her apartment. One of the men had a gun which eventually came into the possession of the appellant. The appellant asked Graves if she performed fellatio. When she replied that she did not, Matthews struck her across her face with the gun.

Tina Wright, a neighbor of Ms. Graves at the time of the incident, testified for the defense. Wright stated that on August 19, 1984, at approximately 2:30 a.m. Graves knocked on her apartment door. Wright observed that Graves was crying and appeared to be upset. "She was

holding her hand up here. There was a big gash from this side of her eye to the other end."

Officer Walter Sallee testified that in the afternoon of August 19, he had the opportunity to interview Graves at Union Memorial Hospital. At that time he observed that she was nervous and had a laceration across her forehead.

Earl Frazier testified that Graves "had a cut up here between her nose, somewhere here about her eyes." He further testified that the appellant had a gun.

The Court of Appeals, in *Dorsey v. State*, 276 Md. 638, 350 A.2d 655 (1976), set forth the following test for use in determining when a lower court has committed reversible error.

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in any way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Id.* at 659, 350 A.2d 655.

Applying this test to the facts in this case, I am persuaded that regardless of the extent of Frazier's intoxication from alcohol and narcotics, there was sufficient other testimony which supported Graves's allegation of injuries. A review of the record convinces me that Frazier's testimony was merely cumulative and that had he not testified there would have remained sufficient evidence to support Matthews's conviction. While I believe it was error for the court to deny cross-examination into the extent of Frazier's intoxication, I am convinced beyond a reasonable doubt that the exclusion of such evidence did not in any way influence the verdict and, therefore, was harmless error.