583 A.2d 1033

Stanley LYBA

v.

STATE of Maryland.

No. 48, Sept. Term, 1990.

Court of Appeals of Maryland.

Jan. 10, 1991.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ. ROBERT L. KARWACKI *, Judge, Specially Assigned, and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

The fourteen count indictment returned by the Grand Jury for the State of Maryland, sitting in Anne Arundel County, against Stanley Lyba, ranged the gamut of sexual offenses. The case went to the jury in the Circuit Court for Anne Arundel County on six of the charges: first degree rape (1st count); second degree rape (2nd count); first degree sexual offense (3rd count); second degree sexual offense (4th count); third degree sexual offense (5th count); and unnatural and perverted sexual practice (9th count), all in violation of the person of a young woman, 18 years of age.[1] The jury found Lyba guilty of each of those offenses. The trial judge merged the conviction under the 2nd count into the conviction under the 1st count, and the convictions under the 4th and 9th counts into the conviction under the 3rd count. He sentenced Lyba to life imprisonment on the 1st count, to 20 years on the 3rd count consecutive to the sentence on the 1st count, and to 5 years on the 5th count consecutive to the sentences on the 1st and 3rd counts.

---

* At the time this case was heard and conferenced, Karwacki, J., a judge of the Court of Special Appeals of Maryland, was specially assigned to this Court. At the time of the decision and adoption of this opinion, he had been commissioned and had qualified as a judge of this Court.

1. The charges of fourth degree sexual offense (6th count); assault with intent to rape (7th count); assault with intent to commit a sexual offense (8th count); use of a handgun in the commission of the felony of a first degree sexual offense (11th count); assault and battery (13th count); and assault (14th count) were abandoned by the State at the close of its case in chief. Judgments of acquittal were granted as to the use of a handgun in the commission of first degree rape, a felony (10th count); and carrying a handgun (12th count).

Lyba appealed from the judgments. The Court of Special Appeals affirmed. *Lyba v. State,* No. 1050, September Term, 1989, filed 26 February 1990, unreported. We granted Lyba's petition for a writ of certiorari and the State's conditional cross-petition. The dispositive question presented to us concerns the trial judge's stricture of defense counsel's cross-examination of the victim.

Lyba does not challenge the sufficiency of the evidence adduced by the State to establish the corpora delicti of the crimes of which he was convicted. At trial, his defense centered on the identification of him as the criminal agent, and he claims on appeal that his defense was prejudicially hampered by the court's adverse rulings on objections during his cross-examination of the victim. Proof of his criminal agency depended primarily upon her identification.

The attack occurred on 12 September 1987 on a dark and rainy night. The victim testified that she had left her abode and was combing the neighborhood to find her lost puppy when she was assaulted. Upon threat of having her head blown off by a gun, she was forced to engage in vaginal intercourse, to perform fellatio, to be subjected to cunnilingus, and to suffer a general pawing and mauling of her body. She promptly reported the crimes and provided police with a description of her assailant. It was not until some nine months later, however, that Lyba was arrested. He was apprehended as a result of a chance encounter with the victim. On 18 June 1988 she was riding in Patapsco State Park with her boyfriend and another acquaintance. They stopped at a rest area and she saw her assailant in a nearby car. There was mutual recognition. The man made a veiled threat about having a gun and then said, to the effect (she could not remember the exact words), "It's amazing who you meet at State Parks." That evening she informed the police of this encounter. Several days later, from a photographic array, she identified Lyba as the man she saw in the car and as her assailant. Shortly thereafter Lyba was arrested.

At the trial the victim recounted in detail the circumstances of her attack and of her subsequent encounter with her assailant. She made a judicial identification of him. On cross-examination defense counsel probed her testimony. He elicited that when she gave a description of her assailant to the police shortly after the attack her "memory was probably fresh but [she] was very upset." Defense counsel asked if she was using "any medication" on the date of her attack and she replied: "No." Defense counsel then inquired: "How about narcotics?" The State objected and the court sustained the objection without comment. Defense counsel did not pursue the subject but moved on to other matters, questioning her in greater detail about the attack and what she observed. Later, when his examination reached the encounter in the park, he asked: "Had you anything to drink that day?" The State objected and the court sustained the objection, again without comment. Defense counsel followed by inquiring: "What was your general condition [the day of the encounter in the park]?" She responded: "I don't know, what do you mean, condition?" Defense counsel did not press the issue but turned to another line of questioning.

The rulings by the trial judge prompted the following question presented by Lyba in his petition for certiorari:

Did the trial court err when it refused to allow defense counsel to question the prosecutrix about whether she was using drugs or alcohol either at the time the offenses occurred or at the time she allegedly identified [Lyba]?

The State prefers to phrase it in simpler terms:

Did the trial court properly restrict Lyba's cross-examination of the victim?

■ Over the years "there has evolved a standard analytical framework for Maryland courts to follow when confronted with [the issue of the restriction of cross-examination]." *Smallwood v. State,* 320 Md. 300, 306, 577 A.2d

356 (1990). We observed in *State v. Cox,* 298 Md. 173, 178, 468 A.2d 319 (1983):

> [T]he trial of any case is a search for the truth. The strength of each side of an issue rests upon the believability of the evidence offered as proof. This evidence unfolds, in large measure, as testimony of the witnesses is produced at trial. The tool available to each side to test the believability of the testimony is cross-examination.

It is well accepted that cross-examination may be used for impeachment purposes. *Thomas v. State,* 301 Md. 294, 308, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985). *See Williams v. Graf,* 194 Md. 516, 522, 71 A.2d 450 (1950). We said in *Cox,* 298 Md. at 178, 468 A.2d 319:

> This Court has recognized as a general rule that a witness may be cross-examined "on such matters and facts as are likely to affect his credibility, test his memory or knowledge, show his relation to the parties or cause, his bias, or the like." *Kantor v. Ash,* 215 Md. 285, 290, 137 A.2d 661 (1958).

Therefore,

> it is proper to allow any question which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or which tends to test his accuracy, memory, veracity, character, or credibility. *DeLilly v. State,* 11 Md.App. 676, 681, 276 A.2d 417 (1971). Seemingly therefore, a witness may be questioned regarding whether he was sober, intoxicated, or under the influence of drugs at the time of the event in question.

*Dove v. State,* 33 Md.App. 601, 606, 365 A.2d 1009 (1976), *rev'd on other grounds,* 280 Md. 730, 371 A.2d 1104 (1977). *Accord* 2 C.E. Torcia, WHARTON'S CRIMINAL EVIDENCE § 424 and § 425 (14th ed. 1986). *See* Anno. *Use of Drugs as Affecting Competency or Credibility of Witness,* 65 A.L.R.3d 92, §§ 1 *et. seq.* (1975). In *Matthews v. State,* 68 Md.App. 282, 289, 511 A.2d 548 (1986), the Court of Special Appeals found it to be

axiomatic that evidence of a witness's intoxication at the time of the event about which he is testifying is admissible for the purpose of impeaching his credibility.

The court pointed out:

It is common knowledge that the quantity of alcohol and/or drugs consumed will affect one's ability to see, to hear, and, generally, to perceive what is occurring.

*Id.*

■ A party's privilege to cross-examine a witness as to whether he was intoxicated or under the influence of drugs at the time the incident about which he is testifying occurred is not without limits. Generally,

"trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."

*Smallwood v. State,* 320 Md. at 307, 577 A.2d 356, quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). We warned in *Smallwood, id.,* quoting *Brown v. State,* 74 Md.App. 414, 419, 538 A.2d 317 (1988), that

[l]imitation of cross-examination should not occur, however, until after the defendant has reached his "constitutionally required threshold level of inquiry."

"[W]ithin that limit a defendant should be free to cross-examine in order to elucidate, modify, explain, contradict, or rebut testimony given in chief." *Smallwood, id.,* and cases therein cited.

■ The trial judge plays a significant role with respect to the scope of inquiry on cross-examination inasmuch as the scope is within the judge's sound discretion. *Robinson v. State,* 298 Md. 193, 201, 468 A.2d 328 (1983). This discretion is exercised by balancing "the probative value of an inquiry against the unfair prejudice [or harassment] that might inure to the witness. Otherwise, the inquiry can

reduce itself to a discussion of collateral matters which will obscure the issue and lead to the fact finder's confusion." *Cox*, 298 Md. at 178, 468 A.2d 319.

■ It is clear that Lyba was entitled, on cross-examination of the victim, to ask whether she had ingested narcotics on the day of the assault and whether she had consumed alcohol on the day she saw Lyba in the park. Those questions went no further than calling for a "yes" or "no" answer. The questions were within the constitutionally required level of inquiry, and, therefore, not subject to limitation. Thus, the questions were proper, and triggered no exercise of discretion on the part of the trial judge.

■ If the answer to a question were "no" that would be an end to the inquiry on that subject unless Lyba was able to produce evidence, contrary to the denial, which was sufficient to support further inquiry. Judicial discretion and the balancing procedure would come into play only upon further inquiry.

■ If the answer to a question were "yes," the defense could follow up the admission by delving the degree of drug influence or alcohol intoxication so that the jury could decide the credibility of the victim and how much weight to give her testimony. The propriety of the questions seeking to ascertain the degree to which narcotics or alcohol affected the victim would be subject to the sound discretion of the trial judge, who, in the exercise of that discretion, would be called upon to balance the probative value of the testimony sought against unfair prejudice or harassment which might inure to the victim.

We hold that the trial court's restriction of Lyba's cross-examination of the victim constituted reversible error.[2] Lyba is entitled to a new trial.

---

**2.** In light of our decision, we do not address the other questions presented by the petition for certiorari and the conditional cross-petition.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.